**Wytheville.**

CITY OF NORFOLK v. NOTTINGHAM AND OTHERS.

JUNE 9, 1898.

1. DEDICATION OF LAND FOR STREETS—*Acceptance—Revocation of Dedication.*—Although there may have been a sufficient dedication of land to a public road or street, acceptance in some.form by the public is necessary to establish the right in the public. The dedication, however, whether express or implied, may be revoked before it has been accepted by competent authority, or others have, upon the faith of it, been induced so to act as to render its revocation unjust.

2. SALE OF LOTS BY A MAP—*Rights of Purchasers in Streets—Rights of Third Persons.*—The sale of lots according to a map vests in the purchasers the right to use the streets appearing on such map, and the right so vested cannot be defeated by the act of the vendor, because by the sale under such circumstances, he is estopped to deny or impeach rights thus acquired. Such an estoppel, however, operates only in favor of him who has been misled to his injury, and he alone can set it up. It does not operate in favor of a city or county which has acquired no rights thereunder.

Appeal from a decree of the Law and Chancery Court of the city of Norfolk, pronounced April 25, 1895, in three chancery suits heard together, in which the appellees, respectively, were the complainants, and in each of which the city of Norfolk, appellant, was the defendant.

*Affirmed.*

The opinion states the case.

*Ruffin & Tomlin, George McIntosh,* and *Thomas W. Shelton,* for the appellant.

*Walke & Old* and *Tunstall & Thom*, for the appellees.


KEITH, P., delivered the opinion of the court.


On August 21, 1890, the Street Inspector of Norfolk city notified Nottingham and others to remove all obstructions upon areas indicated as streets on the maps on file in the clerk's office of the court of Norfolk county lying south of what is designated as Front street on said maps. Thereupon the parties so notified filed their several bills in chancery in the Corporation Court of the city of Norfolk, making said city and its inspector defendants, claiming said areas as their fee-simple property, and praying for an injunction against the threatened action of the city, which was granted. The Court of Law and Chancery of Norfolk city, to which said causes had in the mean time been transferred by operation of law, by its decree of April 25, 1895, perpetuated the injunction, and to that decree an appeal was allowed by one of the judges of this court.

The facts as disclosed by the record, which, in the view we have taken of the case, are material to its determination, are as follows:

The Atlantic Iron Works and Dock Company was the owner of a certain parcel of land in Norfolk county, which it caused to be surveyed and divided into lots, streets, and alleys, as shown by maps which were returned to the County Court of Norfolk county, and copies of which are filed as exhibits in this cause. These streets, avenues, and alleys, run East and West, and North and South, through the property of the Atlantic Iron Works and Dock Company, and all of the squares north of Water street, as designated on said map, were divided into building lots having a frontage of about 25 feet. On September 21, 1870, the Atlantic Iron Works and Dock Company sold at auction 900 feet on the south side of Front street, and

on February 4, 1871, the remainder of its land on the south side of said street was sold. The land so sold embraced the space claimed to be occupied in part by streets, that is to say, the sales were of a continuous and uninterrupted frontage, running easterly on the south side of Front street, without regard to any streets, alleys, or avenues. On September 21, 1870, quite a number of lots were sold in various parts of the property in accordance with the map heretofore referred to. Some time during the day of the sale, however, an announcement was publicly made by the auctioneer, by order of the president of the company, that the map in accordance with which the sale was being made would be corrected, and the streets appearing upon it south of Front street would be effaced, and a map corrected in conformity with this declaration was then exhibited.

There is some effort made on behalf of appellant to contradict the evidence of appellees upon this subject, and witnesses are produced who, though present during the sale, did not hear the announcement made by the auctioneer. Several witnesses, however, testify to the fact that the declaration was made, and a map displayed upon which the erasure of the streets in controversy appeared. That the water front was sold by the continuous running foot, without regard to the space occupied by streets, and the subsequent use of the property by those who purchased at that sale by fencing portions of it, and by buildings which encroach upon the so-called streets, tend strongly to corroborate the contention of the appellees, so that we have no hesitation in deciding that at some period of the day of the 21st of September, 1870, the alleged declaration was made, and a map exhibited in accordance with it upon which the streets and alleys south of Front street were effaced, thereby revoking, so far as it was in the power of the Atlantic Iron Works and Dock Company to do so, the dedication theretofore made of a certain part of its land to public uses.

The purchasers of lots are not parties to this litigation, and their rights can in no respect be affected by its results.

It may be that the dedication was complete as to those who purchased lots prior to the public sale on the 21st of September, 1870, or as to those who purchased on that day before the announcement was made by the auctioneer, to which we have referred. It may be that the owners of lots so purchased, though they acquired a complete right to the use of the streets as designated upon the maps at the time their respective purchases were made, have since compromised or lost the right so acquired. We are not called upon to consider or to decide any of these questions. We are only concerned with the rights of the parties before us.

Assuming, then, that there had been, on the 21st of September, 1870, prior to the announcement made by the auctioneer of the withdrawal of the streets in controversy, a sufficient dedication, it is certain that there had been no acceptance of it by the public, and while there is some conflict among the authorities as to what will constitute an acceptance by the public, whether it must be by a formal acceptance, or what degree of user will warrant an inference of it without any formal act to that effect, they declare with one voice that acceptance manifested in some way is necessary to establish the right in the public.

The sale of lots in accordance with a map vests in the purchasers the right to the use of the streets appearing upon such map, and the right so vested cannot be defeated by the act of the vendor, because by the sale under such circumstances he is estopped to deny or impeach rights thus acquired. That the sale operates by way of estoppel is fully established by the authorities. See Herman on Estoppel, secs. 1145, 1146, 1147, 1148; *City of Cincinnati* v. *White*, 6 Peters 431; *Weisbrod* v. *Railway Company*, 18 Wis. at page 43.

It is said by Lord Campbell, in *Cairncross* v. *Lorrimer*, 3 Macq. H. L. C. 829, that "if a man, either by words or conduct, has intimated that he consents to an act which has been

done, and that he will offer no opposition to it, although it could not have been lawfully done without his consent, and he thereby induces others to do that from which they might have otherwise abstained, he cannot question the legality of the act he has so sanctioned, to the prejudice of those who have given faith to his words, or to the fair inference to be drawn from his conduct."

The doctrine has for its object the suppression of fraud and the enforcement of honesty and fair dealing. Where, therefore, lots have been offered for sale, and have been purchased in accordance with a map or plat upon which streets are made to appear, it is presumed that the purchase was induced, and the price of the lots enhanced thereby, and the seller is estopped to deny the right which has been thus acquired. To permit him to sell the lots under such circumstances, and then to close the streets, would be to permit him to perpetrate a fraud upon his vendees. Such an estoppel, however, operates only in favor of him who has been misled to his injury, and he alone can set it up. This proposition would seem to flow as a logical sequence from the principle upon which estoppel rests, and is abundantly sustained by authority. See *Ketchum* v. *Duncan,* 96 U. S. 659.

Applying this principle to the case before us, it is manifest that the city of Norfolk is not within its influence. It may be conceded that by the act of 1890, by which its limits were extended so as to embrace the land in controversy, the city of Norfolk succeeded to whatever public rights were at that time in the county of Norfolk, and there is some contention upon the part of appellant that the county of Norfolk had accepted the dedication of the streets under consideration, but the facts relied upon to prove acceptance on the part of either the county or city were long subsequent to the 21st day of September, 1870. The offer to dedicate was withdrawn on that day before any acceptance, express or implied, on the part of the county of Norfolk. It was not misled to its prejudice by

the appellees, and it cannot invoke against them the doctrine of estoppel.

That a dedication of land to the use of the public, whether express or implied, may be revoked before it has been formally accepted by competent authority, or others have upon the faith of it been induced so to act as to render its revocation unjust, is recognized by the courts.

In the case of *Harris* v. *Commonwealth*, 20 Gratt. at page 840, it is said " that the owner is estopped to assert there has been no formal acceptance where the public, relying upon the manifest intent of the party to dedicate the property, have entered into the occupation of it in such manner as renders it unjust and improper to reclaim it. * * * * * * * Where no public or private interests have been acquired upon the faith of the supposed dedication, the mere user, by the public, of the supposed street or alley, although long continued, should be regarded as a mere license, revocable at the pleasure of the owner; " and to the same effect see *Buntin* v. *Danville*, 93 Va. 205.

In the case before us there was prior to the revocation no use upon the part of the public and no acceptance by it in any form of the alleged dedication.

In the case of *Holdane* v. *Trustees, &c.*, 21 N. Y. at page 479, the court says: "Assuming, however, that enough was done by the owners to constitute a present dedication of the land, I think they still had a right to revoke it. The law of dedication is somewhat anomalous; but it may be said to rest, in part at least, upon the doctrine of estoppel *in pais*. Though the owner of land in a city or village may evince, by his acts, an intention to dedicate a street, or square, or other plat of ground, to the public use, no sufficient or valid reason can be assigned against a change of purpose and a subsequent resumption of the possession, unless the public accommodation and private rights are to be materially affected by an interruption of the enjoyment."

Opinion.

In this case there could have been no "interruption of the enjoyment" on the part of the public, for there was not a moment of time between the act of dedication and the act of revocation when any right of any kind had vested in the public.

We are therefore of opinion that there is no error in the decree from which the appeal was taken, and it is affirmed.

*Affirmed.*