# Richmond.

## CITY OF RICHMOND v. GALLEGO MILLS CO.

### DECEMBER 3, 1903.

### Absent, Buchanan, J.*

1. DEDICATION—*How Evidenced—Easements.*—The dedication and ac-
ceptance of an easement may be by grant, or by agreement, ex-
pressed or implied, and may be shown by proof of an express
grant or agreement, or by prescription requiring an uninterrupted
enjoyment or use immemorially, or for twenty years, to the extent
of the easement claimed, from which user a grant is implied.

2. EASEMENTS—*Acceptance by City—How Evidenced—Presumption—
Case at Bar—* A valid acceptance of an easement by a town does not
require any distinct act of recognition by resolution of the cor-
porate authorities of the town. Acceptance will be presumed
where it appears that the property has been set apart for the
public use, and the public has had exclusive, uninterrupted and
adverse use thereof for over twenty years, and public and private
rights have been acquired with reference to its use and enjoy-
ment. In the case at bar the city of Richmond has had adverse,
uninterrupted and exclusive use of a culvert as an essential part
of its sewer system for over fifty years, has extended it under reso-
lutions of its Council, has appropriated money for its repair, and
has exacted money for the use of it as of other sewers. It
must, therefore, be regarded as city property.

3. MUNICIPAL CORPORATIONS—*Easements—Acceptance—Repairs.*—The ac-
ceptance by a city of a culvert as a part of its sewer system
renders the city liable for its maintenance in the same manner
and to the same extent as if it had been originally built by the
city.

*Judge Buchanan was detained at home by sickness.

4. Instructions—*Construction of Written Instruments.*—It is not error to instruct a jury as to the legal effect of resolutions adopted by a City Council. It is the province of the court and not of the jury to pass upon the effect of written documents introduced in evidence.

5. Municipal Corporations—*Sewers—Power to Acquire.*—A municipal corporation may acquire and maintain necessary sewers outside of its streets, alleys and public places as incident to its general powers to maintain and control its streets, without any express grant of authority for that purpose. This general power is not curtailed by an express grant in its charter of power to build bridges in and culverts under its streets, and to prevent and remove structures, obstructions and encroachments over, or under, or in any street or alley or any sidewalk thereof.

6. Negligence—*Joint Wrong-Doers.*—If a person is injured by the concurrent negligence of two others he may sue either, or both.

7. Instructions—*Evidence to Support.*—It is not error to refuse to instruct on abstract propositions of law, or when there is no evidence to support the instruction offered.

8. Municipal Corporations—*Sewers—Maintenance—Estoppel.*—It is the duty of a city, from the time it acquires a sewer, to maintain it in a reasonably safe condition, without regard to what may have been the attitude of the former owner of the land through which it passes in respect to it. In the absence of some covenant in the chain of title to that effect neither estoppel nor contributory negligence can be construed to run with the land.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Henry R. Pollard,* for the plaintiff in error.

*Coke & Pickrell, Charles U. Williams, Leake & Carter* and *B. Rand. Wellford,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

The gravamen of this action is damage to the property of the defendant in error, the Gallego Mills Company, occasioned by the collapse of a stone culvert extending along the western foundation wall of the mill building, which culvert, the declaration alleges, it was the duty of the plaintiff in error, the city of Richmond, to maintain.

These mills are located at the eastern end of the basin of the old James River Company, now, with its appurtenances, the property of the Chesapeake & Ohio Railway Company. The western wall of the mill is separated from the basin by a wide, open space, known as the "basin embankment." Skirting that wall, and between it and the embankment, at the time of the injury complained of was an open area, part of the mill premises, one wall of which was the mill wall itself, and the other a stout brick wall, built into the embankment. This latter wall, which is called in the evidence sometimes the "area wall," and sometimes the "revetment wall," is the dividing line between the property of the Gallego Mills Company and the basin embankment, which latter is the property of the Chesapeake & Ohio Railway Company, as successor in title, through several *mesne* conveyances, of the old James River Company. Water to run the mills is drawn from the lower or eastern end of the basin, and conveyed through a forebay, or flume, which, passing through the basin embankment in front of the western wall of the mills, crossed over the open area above referred to into the mills. In thus crossing the area, it was supported by the area or revetment wall, and also by an arch spanning the area.

After the collapse of the culvert along the western wall of the mills, the city of Richmond, with knowledge of the broken, obstructed, and dangerous condition of the culvert at the point where it passed underneath the bottom of the area along the western wall of the mill and the foundations of the outward wall, the area, and the brick arch spanning the same, neglected to repair the culvert, and continued to use it for sewage pur-

poses.   The effect of that neglect and user was to undermine
the area wall and arch, causing it to settle, and causing the fore-
bay or flume to break, and give way, whereby a large volume of
water flowed from the basin over the embankment and area into
the mills, seriously damaging the property.

The mill occupies lot 361 in the plan of the city, and the
first mill was built upon it in the year 1833.   The lot, as well
as Twelfth and Canal streets, is below the level of the old basin,
and on the Canal-street side of it there was a deep ravine, ex-
tending thence to James river.   Prior to the year 1833 the old
culvert ran from near the corner of Eleventh and Cary streets
across Basin street, and that part of the basin embankment now
occupied as the roadbed of the Chesapeake & Ohio Railway
Company, and emptied on lot 361.   It does not clearly appear
by whom this culvert was originally constructed; but it does
appear that for over sixty years it was in the open, continuous,
and exclusive use of the city of Richmond.

In the year 1833 the Common Council of the city authorized
the commissioners of streets to contract for the extension of the
culvert, so as to guard against its being dammed up at its
southern extremity by the excavation of the foundations of the
mill, and the year following the commissioners were directed
to contract for its further extension.

In the year 1836 the Council adopted a resolution author-
izing the construction of a new culvert up D or Cary street to
Ninth street, to be connected with the old culvert under the
basin.   In the year 1873 another culvert was built, by direction
of the Council, from Seventh and Cary streets, to Eleventh
and Cary streets, which also connected with the old culvert.

It thus appears that by authority of the Council this culvert
was used by the city as the sole outlet for all sewage from the
localities drained by the two culverts constructed in 1836 and
in 1873, until after the injury to the mills, in July, 1898.   It
further appears that for the use of this system the city exacted

tolls, as in case of its other sewers.  Other evidence of accept-
ance by the city of Richmond of this old culvert as part of its
sewer system was adduced from the records of the Council, to
which it is unnecessary to allude.

The evidence tends to show that the culvert originally ran
across the present site of the Gallego Mills, but years ago, long
prior to the acquisition of the property by the present owners,
near the western wall of the mill building, it made a detour
and ran along the western wall of the mill, as before described;
and, after passing the mills, crossed under Canal street, and
emptied into the tail race, which flows into James river.  The
culvert from Eleventh and Cary streets to the mills was a circu-
lar brick culvert.  From that point to its mouth it is a stone box
culvert.  The inference from that circumstance is that the latter
section of it was built by the authorities of the city in the year
1833, in pursuance of the resolution of the City Council, to
prevent its southern extremity from being dammed by the con-
struction of the foundations of the mill.  But, however that
may have been, it is quite certain that the section of culvert
referred to was not built by the defendant in error.

Upon the foregoing facts, on motion of the plaintiff, the trial
court instructed the jury, that, "Although they believed from
the evidence that the culvert passing under the basin embank-
ment was not built by the city of Richmond, they are, neverthe-
less, instructed that the city of Richmond, by the resolutions of
the City Council permitting the long and uninterrupted use
of it for the flow of water through it from the city sewers,
thereby adopted it as a part of its system of sewers in that sec-
tion of the city, and the said city is chargeable in respect to it
with the same duties and responsibilities as it would be if said
culvert had been constructed by said city."  The giving of that
instruction and the rejection of a competing instruction offered
by the defendant, constitute the first assignment or error.

The defendant's instruction is predicated upon the existence

of a natural water course of sufficient volume to carry off all sewage passing therein from the city sewers, flowing through the old culvert along a natural bed or channel. It is unnecessary to enter upon a discussion of the doctrine propounded by that instruction. It was without evidence to sustain it, and properly refused.

The instruction given at the instance of the plaintiff embodies the principle that the dedication and acceptance of an easement may be by grant or agreement, express or implied. The dedication and acceptance of an easement can be shown by proof of an express grant or agreement, or by prescription requiring an uninterrupted enjoyment or use immemorially, or for twenty years, to the extent of the easement claimed, from which user a grant is implied. That doctrine has been repeatedly enunciated and upheld by the decisions of this court.

Thus, in *Harris' case,* 20 Gratt. 833, 838, the court said: "The intent may be presumed from circumstances connected with a long and uninterrupted user by the public. But such user is only important as indicating a purpose to make the donation. And this presumption may be rebutted by circumstances showing that an appropriation of the property to the use of the public is not intended." The opinion proceeds (pages 839, 840): "In *Kelly's case* (8 Gratt. 632) it was held, with regard to county roads, that there must be an acceptance by the County Court upon its records, but it was said this principle did not apply to streets and alleys in town. As to them, the acts of the corporation officers may have the same effect as the acts of the County Court.

"It may be safely assumed that in this State there may be a valid acceptance of an easement in a town, without any distinct act of recognition by the corporate authorities of such town. The mere user, however, by the public, of the *locus in quo,* will not of itself constitute an acceptance, without regard to the character of the use, and the circumstances and length of time

under which it was claimed and enjoyed. Where property in a town is set apart for public use, and is enjoyed as such, and private and public rights acquired with reference to it and to its enjoyment, the law presumes such acceptance on the part of the public as will operate an estoppel *in pais*, and preclude the owner from revoking the dedication."

In Dillon on Mun. Cor., sec. 642, that author says: "There must be an acceptance of the dedication, and this acceptance must be by the proper or authorized local public authorities. It may be express and appear of record, or it may be implied from repairs made and ordered, or knowingly paid for, by the authority which has the legal power to adopt the street or highway, or from long user by the public." The presumption of acceptance is strengthened by the circumstance that the easement is beneficial.

In this case, as has been seen, the testimony shows an adverse, uninterrupted, and exclusive user of the culvert by the city for more than half a century; that it had been extended by resolution of the Council; that an appropriation of money had been made for its repair; and that it was an essential part of the sewer system of the city, and a source of public revenue. So that, upon well-settled principles, the title of the city to the culvert was as perfect as if that title had been acquired by express grant.

See *City of Richmond* v. *Stokes,* 31 Gratt. 713; *Chalkley* v. *City of Richmond,* 88 Va. 402, 14 S. E. 339, 29 Am. St. Rep. 730; *Buntin* v. *City of Danville,* 93 Va. 200, 24 S. E. 830; *City of Winchester* v. *Carroll,* 99 Va. 727, 40 S. E. 37.

In considering the doctrine of dedication and acceptance, the fact should not be lost sight of that the public itself would be the chief loser by the adoption of a narrow, restricted, and illiberal interpretation of the rules applicable to that subject.

"The principle is founded in public convenience, and has been sanctioned by long experience. Indeed, without such a principle, it would be difficult, if not impracticable, for society

to enjoy those advantages which belong to a state of advanced civilization, and which are essential to its accommodation. The importance of this doctrine may not always be appreciated, but we are in a great degree dependent on it for highways and streets, and for the grounds appropriated as places of amusement or of public business, which are found in all towns, and especially in our populous cities." Dillon on Mun. Cor., sec. 627.

The contention that the first instruction invaded the province of the jury, in that it withdrew from their consideration the evidence upon which it was predicated, is without merit. The instruction merely told the jury that the legal effect of the resolutions adopted by the Council of the city of Richmond, the authenticity of which was not denied, was an acceptance of the culvert and made the city responsible for its maintenance in the same manner and to the same extent as if it had been built by the city. It was manifestly the province of the court, and not of the jury, to pass upon the effect of the resolutions in question.

"There is no rule of law better established than that the construction of a written instrument is a matter of law for the court, which defines its terms, its signification and legal effect, from the language used and the context." Proffatt on Jury Trial, sec. 300; *Addington* v. *Etheridge,* 12 Gratt. 436.

So, in the case of *Washington, etc., R. Co.* v. *Lacey,* 94 Va. 460, 26 S. E. 834, it was held: "As a general rule, the construction of all written documents belongs to the court exclusively, and it is not error to instruct a jury as to the proper construction of a city ordinance offered in evidence." *New River Mineral Co.* v. *Painter,* 100 Va. 507, 42 S. E. 300; *Pettyjohn* v. *National Exchange Bank,* 101 Va. 111, 43 S. E. 203.

The case of *Robinson* v. *City of Danville,* 101 Va. 213, 43 S. E. 337, is relied on as authority in this case by the city of Richmond. The facts in the two cases are essentially different. In

that case the drain which existed prior to the building of the culvert under River street originally brought down water from a spring and surface water, but, at the time of the injury complained of, the water from the spring had sunk before it reached the culvert.   The city of Danville made no use of the drain to carry off either sewage or surface water.   The culvert was built by the authorities of North Danville, not for the purpose of carrying off drainage from the town, but to prevent a natural drain from being stopped by it in raising the grade of River street. The culvert was obstructed by the Riverside Cotton Mills, on whose lot it emptied, and not by the city of Danville.

The second subdivision of the first assignment of error is because the city of Richmond had no power to construct or maintain sewers outside of its streets, alleys, or public places.   The provision of the charter relied on to sustain that contention is as follows: "They (the Council) may build bridges in, and culverts under said streets; and may prevent or remove any structure, obstruction, or encroachment over, or under, or in a street or alley, or any sidewalk thereof, and may have shade trees planted along the said streets."

The foregoing provision was not intended to restrict the power of the city in the construction of sewers, but rather to increase the servitude that ordinarily attaches to a right of way, by authorizing the city, in addition to its right of way over its streets and alleys, to exercise the other privileges specified.

"Every municipal corporation has the power to purchase and hold all the real estate reasonably necessary to the proper exercise and enjoyment of the powers conferred upon it, or essential to the purposes for which it was created." *Richmond, etc., Co.* v. *West Point,* 94 Va. 668, 27 S. E. 460.

"The right to provide for the drainage of streets and to construct and repair sewers is generally granted to cities in express terms by their charters, or by the statute governing their incorporation; but, without any express grant of such authority,

the right to exercise it is regarded as incident to the general power to maintain and control streets. The authority of the municipality as to such matters may extend even beyond the city limits, and, unless prohibited by charter or statute, the city has inherent power to contract for and construct works beyond the corporate limits for the discharge of sewage when the same is necessary." Elliott on Roads & Streets (2d Ed.) sec. 468; 1 Dillon on Mun. Corp. (3d Ed.), sec. 89.

If, therefore, the old culvert was a necessary outlet for sewage for that section of the city, which is not denied, it was competent for the city to have acquired it either by express or implied grant. *Kranz v. Mayor of Baltimore,* 64 Md. 491, 2 Atl. 908; *Stoddard v. Village of Saratoga Springs,* 127 N. Y. 261, 27 N. E. 1030; *Leeds v. City of Richmond,* 102 Ind. 372, 1 N. E. 711; *Coldwater v. Tucker,* 36 Mich. 474, 24 Am. Rep. 601.

The second assignment of error is to the refusal of the court to grant instruction 4, asked for by the city of Richmond.

That instruction told the jury that if they believed from the evidence that the embankment over the sewer was made by some corporation other than the city, and that the primary cause of the overflow complained of was the imperfect construction of the said bank, or its improper or careless maintenance by such corporation or its assignees, the jury should find for the defendant.

The contention of the city in that regard is that by covenants and agreements between the James River Company and remote grantors of the plaintiff, grantees from that company, it became the duty of the plaintiff to keep in repair the embankment in front of the Gallego Mills, the property of the Chesapeake & Ohio Railway Company.

The covenant relied on has been carefully scrutinized. It imposes no duty on the covenantor to keep in repair the embankment, but stipulates that he shall not damage it and the

works of the James River Company; and mainly had refer-
ence to the original construction of the forebay or flume through
which the water from the basin is carried over the embankment
to the machinery of the mill. If the injury to plaintiff's
property was due to the concurring negligence of the Chesa-
peake & Ohio Railway Company and the city of Richmond,
either or both could be held liable. Therefore, an instruction
which told the jury that the city was not responsible was erro-
neous and properly refused. *Riverside Cotton Mills* v. *Lanier,*
*ante* p. 148, 45 S. E. 875.

The two remaining assignments of error may be considered
together. The plaintiff in error complains of the refusal of
the court to give instructions 9 and 11, which are as follows:

"(9) Though the jury believe from the evidence that the
sewer in the declaration mentioned, the defective condition of
which is alleged to have caused the damage complained of, had
been used or controlled by the city of Richmond so as to be-
come one of its works, yet if they believe from the evidence
that the said sewer was located on the property of the Gallego
Mills Company, and further believe that the plaintiff, or those
under whom the plaintiff claims, took control of the said sewer
without the consent of the city, and changed in part the location
thereof, and reconstructed a large portion thereof, or otherwise
dealt with it as its own, then the plaintiff is estopped from
claiming in this suit that the said sewer was the sewer of the city
of Richmond, and they (the jury) should find for the defend-
ant."

"(11) Though the jury believe from the evidence that the
sewer in the declaration mentioned, the defective condition of
which is alleged to have caused the damage complained of, had
been used or controlled by the city of Richmond so as to be-
come one of its works, yet if they believe from the evidence that
the said sewer was located on the property of the Gallego Mills
Company, and further believe that the plaintiff, or those under

whom the plaintiff claims, took control of the said sewer without consent of the city, and changed in part the location thereof, and reconstructed a large portion thereof, or otherwise dealt with it as its own, and if they further believe that the defect or imperfect condition of the sewer complained of in the declaration, which caused the damage to the plaintiff's property, occurred on that portion of the sewer built or constructed by the plaintiff, or those under whom the plaintiff claims, and from whom it derives its title, and further believe that such defect or imperfect construction was the primary cause of the collapse of the said sewer and damage to the plaintiff's property, then the plaintiff is chargeable with contributory negligence, and is not entitled to recover in this case."

In respect to these instructions, it may be remarked that there was no evidence to sustain the hypothetical case upon which they are based, and correct practice forbids the giving of an instruction upon an abstract proposition of law, or where there is no evidence to support it. *Kimball* v. *Borden,* 95 Va. 203, 28 S. E. 207; *Reed's case,* 98 Va. 817, 36 S. E. 399.

The Gallego Mills Company acquired the property in the year 1895, and it is not pretended that it ever took control of the sewer or changed its location, or constructed any part of it. The contention that the acts of some former owner of the property can estop the present owner from claiming compensation for injuries to his property resulting from a failure of the city to maintain its sewer and keep it in a reasonably safe condition, or that such acts of a former owner as those contemplated in the instructions can be construed as contributory negligence of the present owner, is not sustained either by reason or authority.

It is the duty of a city, from the time it acquires a sewer, to maintain it in a reasonably proper condition, without regard to what may have been the attitude of a former owner of the land through which it passes with respect to it. In the ab-

sence of some covenant in the chain of title to that effect, neither estoppel nor contributory negligence can be construed to run with the land.

The instructions were, therefore, properly rejected upon two grounds: (1) That there was no evidence to sustain them as to the plaintiff; and (2) that the proposition of law embodied in them is unsound, so far as applied to the acts of former owners of the property.

Upon the whole case, the judgment complained of is without error, and is affirmed.

*Affirmed.*