## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### KEPPLER AND OTHERS V. CITY OF RICHMOND.

#### March 13, 1919.

1. DEDICATION—*Alleys—Richmond City Charter.*—The charter of the city of Richmond (Acts 1869-70, pp. 120, 128), provides that when an alley shall have been opened to and used by the public for a period of five years, the same shall become an alley for all purposes, and the city shall have the same authority and jurisdiction over and right and interest therein, as they have by law over the alleys laid out by it. These provisions are valid as statutory law, and where they apply they are conclusive evidence of dedication. But this charter provision requires the same evidence of dedication, to put it in operation, as the law requires to raise an implication of a common-law dedication from mere user of a way. The requirement that the alley must be "opened to" as well as "used by the public," for the period named, differentiates this charter from charters or statutes which contain merely the provision that a user by the public for the period prescribed therein shall confer a right of way upon the public.

2. PRESCRIPTION—*Claim of Right and Adverse User—Streets and Highways.*—In order for a city by public user to acquire the right of a public easement in land used as an alley by prescription, the user must be under a claim of right and must also be unequivocally adverse.

3. DEEDS—*Recitals—Admissibility in Evidence—Party Not in Privity with Grantor.*—In a suit by the owners of a lot to enjoin the city from claiming that a part of the lot had been dedicated as an alley, a deed, over thirty years old, to property abutting on the alleged alley was held not admissible in evidence, on the ground that its recitals are binding on complainants, under the rule applicable to recitals or declarations in deeds to which the parties to a cause are parties or privies, since there was no privity of estate between the complainants and the owners of the property conveyed by the deed.

4. ANCIENT DEEDS—*Boundaries.*—In a suit by the owners of a lot to enjoin the city from claiming that a part of the lot had been dedicated as an alley, a deed, over thirty years old, to property abutting on the alleged alley was held admissible in

evidence against complainants, although they were not in privity therewith, under the exception which ancient deeds afford to the rule as to the inadmissibility of hearsay evidence. It was admissible because of its declaration that the rear line of the lot it conveyed was on an alley.

5. ANCIENT DEEDS—*Boundaries.*—Declarations in ancient deeds are admissible to prove boundary lines and such traditional evidence is admissible, not only that a certain tree or other monument marked a certain boundary line, but also that a public body of land, such as a manor, parish, or highway, or the like, or even a private body of land in which a number of persons have a common interest, marked such boundary line, where the declaration comes from one having such common interest.

6. ANCIENT DEEDS—*Boundaries—Alleys.*—A public alley, or an alley in common, as marking the boundaries of abutting property owners, may be a subject upon which traditional declarations may be admissible in evidence as tending to prove its existence.

7. ANCIENT DEEDS—*Weight.*—Declarations in an ancient deed as to boundaries upon the existence or location of a way, are not entitled to much weight, and may be rebutted by very slight evidence of a more definite character. In the instant case the ancient deed itself contained a clause which rebutted any inference which might be drawn from it as to the existence of the alley in question of the width claimed by the city.

8. ANCIENT DEEDS—*Admissible in Evidence.*—Deeds less than thirty years old are inadmissible in evidence as ancient deeds.

9. ANCIENT DEEDS—*Weight—Wide Alley.*—Where the question at issue involved the width of an alley ancient deeds describing it as a wide alley, while admissible, have little probative value since they give no definite width.

10. DEDICATION—*Express or Implied Dedication—Intent to Dedicate.*—There are two classes of dedications, express and implied. The intent to dedicate is essential to both classes in order to complete a dedication.

11. DEDICATION—*Implied Dedication.*—An implied dedication is not founded upon a grant, nor does it necessarily presuppose one. It is founded on the doctrine of estoppel *in pais.*

12. DEDICATION—*Implied Dedication—Intent.*—The intent to dedicate which may be implied need not have actually existed in the mind of the landowner. One is presumed to intend the usual and natural consequences of his acts. Hence, where public or private rights have been acquired upon the faith of conduct of the landowner under such circumstances as to make the doctrine of estoppel applicable, the law will imply

75

the intent to dedicate even where there is an entire absence thereof in the mind of the landowner, and even against a contrary intent.

13. DEDICATION—*Public User—Street.*—Where no public or private interests have been acquired upon the faith of the supposed dedication, but public user is relied on to establish dedication of land for a street, the user must be of such a character as would indicate to prudent men that the public claim is, as of right, to the way as a street or a road, and that the owner *is fully aware of the extent and character of the use* and makes no objection. The actual knowledge on the part of the owner need not be proved; but the user must be of such an adverse character that it may be reasonably expected to convey such knowledge to owners of property affected if they are alive to their own interests.

14. DEDICATION—*Public User—Street—Notice of Claim to Easement —Map Adopted by City.*—In the case at bar the city authorities never graded, paved, repaired the paving on, laid or repaired any sewer on, or did any other overt acts whatsoever upon the strip of land in question, so as to give notice that a claim to it as an easement was asserted. The sole act of the city having any tendency to give notice of such a claim was the adoption by the city council of a map of the city on file in the city engineer's office, which on a small scale showed the alley in question, but the property owners and those under whom they derived title had no notice of such disclosure by the map until the controversy arose.

*Held:* That the evidence did not establish the requisite notice of the claim of easement in order to raise a presumption of dedication.

15. DEDICATION—*Intent—Evidence.*—Intent is the vital principle of dedication. In a case where acts and declarations are relied on to show such intent, to be effectual, they must be unmistakable in their purpose and decisive in their character, and in every case it must be unequivocably and satisfactorily proved. Individual owners of property are not apt to transfer it to the community, or subject it to public servitude, without compensation, and such donation is not to be readily inferred.

16. DEDICATION—*Alley—Public User.*—In the instant case it appeared from the evidence that the user by the public of the land in controversy as an alley, was not unequivocally a use as of right, and might be satisfactorily accounted for without the need for an implication of a dedication of the strip to public use.

Appeal from a decree of the Chancery Court of city of Richmond.   Decree for defendant.   Complainants appeal.

*Reversed.*

This suit turns upon the question whether the appellants, or those under whom they derive title, have dedicated a narrow strip of land, approximately 8x50 feet in size, at the rear of their lot in the city of Richmond, for the use of the public as a public alleyway.

The decree complained of held that the plaintiffs (the appellants here) "have not sustained their bill by showing that no dedication has ever been made of the eight-foot strip of land"; refused to grant the injunction prayed for in the bill, which was to enjoin and restrain the city of Richmond "from claiming that said strip of land has been dedicated and from interfering with the rights of" the appellants therein; and dismissed the bill.

The controversy is solely between the appellants and the city of Richmond.   No private property owner claiming any right of easement over such strip of land is before the court in this cause.

The lot of appellants is located on the southwest corner of seventh and Broad streets.   They trace title to it back to Mrs. Catherine Keppler, to whom it was conveyed by Wm. H. McFarland and wife by deed of date May 22, 1851. This is the most recent writing in the chain of title of appellants, which contains the boundaries of such lot.   The description of the lot contained in such deed, so far as material, is as follows:   "* * * fronting fifty feet on the south side of Broad street and running back between parallel lines one hundred and thirty-seven feet, more or less, to an alley, and is bounded on the east by the line of Seventh street * * *, the said lot having a brick tenement thereon, it being the same lot of land conveyed to the said

Wm. H. McFarland by James E. Heath (surviving trustee) by deed bearing date on the 12th day of May, 1851."

Prior to 1851, by certain deeds in the chains of title of other owners of lots fronting on the south side of Broad street to the west of the Keppler lot aforesaid, and of lots fronting on the north side of Grace street, extending from Seventh and Grace streets in a westwardly direction, the alleyway mentioned in said deed to Mrs. Keppler was referred to as a "10-foot alley" and such alley is located by the metes and bounds contained in such deeds and by the next preceding deed in the Keppler chain of title, as extending from Seventh street between the rear ends of such lots for a distance of approximately seventy-five feet, where the alleyway ended; being obstructed at that point by the width of a lot fronting on Broad street and the opposite lot, fronting on Grace street; the deeds in the chains of title of the latter lots making no provision for any alleyway at their rear. Passing to the west of this short discontinuance of the alley, the deeds in the chains of title of the remaining lots fronting on the south side of Broad and the north side of Grace streets, on to Sixth street ,so far as they appear in evidence, provided, in effect, for a "10-foot alley" between the rear ends of such lots. The alley extending from Seventh street, however, is the alley involved in this case and that is the alley hereinafter referred to.

It would seem that the building line on the south side of Broad street, or that on the north side of Grace street has been encroached upon, or such building lines have both been encroached upon, since the depths of the lots referred to were originally fixed by the plans or plats thereof which were followed by the respective deeds of conveyance of such lots; and it appears in evidence that on locating such lots by their metes and bounds as described in the conveyances of them prior to 1851, they leave said alleyway of an actual width of approximately twelve feet, instead of ten feet as referred to in certain conveyances thereof as aforesaid.

At the time of the institution of this suit the Young Men's Christian Association had acquired and was the owner of all of the lots fronting on Grace street whose rear ends abutted on the alley next above mentioned; and the Y. M. C. A. had also acquired and was then the owner of the lot fronting on Grace street which, along with the Broad street lot adjoining its rear end, blocked the alley as aforesaid. And it appears in evidence that the Y. M. C. A. has in recent years erected an enclosure at the rear of its property, shown by the dotted lines on the plat below, which encroaches something over two feet on the south side of the said twelve-foot alleyway, thus leaving only approximately ten feet in width of said twelve-foot alleyway, by seventy-five feet of it in depth from Seventh street remaining open at the time this suit was brought.

The *locus in quo* above described will more distinctly appear from the following plat in evidence in the cause:

The brick tenement aforesaid and two buildings erected subsequently to 1851 occupied the whole of the front of the

Keppler lot, but did not extend back very far on such lot. The then owner of the Keppler lot, in 1858 or 1859, erected thereon, just in the rear of the Broad street buildings, two brick stores; and about a year later another brick store, all three fronting on Seventh street, whereby the entire lot was covered with buildings, except a stip of ground approximately eleven feet wide by fifty feet long at the rear of the lot—there being approximately eleven feet of such vacant portion of such lot abutting on Seventh street and fifty feet thereof abutting on said alley.

The last-mentioned brick store building, erected about the year 1860, as aforesaid, was known and designated as 210 north Seventh street, and stood until 1911, when it was torn down at the same time that the other old buildings on the Keppler lot were torn down. This building was two stories high. The room on the ground floor had its front entrance on Seventh street and a side door entrance from said eleven by fifty-foot strip of ground, the side-door entrance being located about thirty feet from Seventh street. This room was rented out by the owners from time to time as a saloon or bar-room, and was occupied and used as such by tenants practically from 1860 to 1907, when liquor license was refused in that locality, the side door being much used by customers and frequenters of the bar, and it was also used for the bringing in of beer and other things; and that side entrance of the premises added considerably to its rental value.

The second story of the building last mentioned contained an assembly room or club room, to which the same side door bar-room entrance aforesaid also gave access.

There was a board walk which extended from Seventh street to said side door entrance which lay near the side of the building, and was used for a great number of years prior and up to about 1907 in connection with the use aforesaid of said side entrance. This walk was kept in repair by tenants of the property.

There was a large coal vault with brick walls under the front part of the building, a portion of which extended out between five and six feet from the south side thereof into said eleven-foot strip of ground, into which there was a manhole opening in such strip of ground. This coal vault and the manhole opening for storing coal was used for a great many years by tenants of the premises prior and up to 1911, as appurtenant to said premises.

There was a basement under the rear part of the building to light which there were several areas which extended three feet from the south line of the building out into said eleven-foot strip of ground and occupied that much of same until 1911 when the building was torn down as aforesaid.

There was an ordinance of the city under which the privilege might have been obtained of maintaining said coal chute or manhole opening and said areas, even if they had been in a public alley; but the preponderance of the evidence is that no such permits were ever asked for or obtained by the owners or tenants of the Keppler premises aforesaid.

There is a city sewer under Seventh street which was constructed in 1857 from the direction of Grace street to an ending at a point opposite the mouth of said alley on Seventh street. A sewer was also constructed in that year along the whole length of said alley, passing the rear of the Keppler lot, approximately in the center of said twelve-foot alley width, and connecting with the Seventh street city sewer at its ending point aforesaid. The preponderance of the evidence is to the effect that this alley sewer was not a public, but a private sewer, and was appurtenant to the lots the rear ends of which abutted thereon.

The alley at the rear of the Keppler lot was first paved some time, more probably, about 1860, as shown by a preponderance of the evidence. It was then paved with cobble stones and at the same time, as shown by such evidence,

the whole of said eleven by fifty-foot strip of land, not occupied by the coal-vault manhole and the basement areas aforesaid, was paved with the same material. The preponderance of the evidence shows, however, that none of such paving was done by the city; and we must infer from the evidence that this paving was done in the twelve-foot alley by the abutting lot owners and on the eleven by fifty-foot strip by the then owner of the Keppler lot. Nor were any repairs made to such paving by the city at any time subsequently. On the other hand there is direct evidence that the then owner of the Keppler lot, in 1896, 1897 and in 1901, repaired certain portions of the paving on the eleven-foot strip where it had become worn from the turning of vehicles delivering coal to said coal vault.

It was the purpose of appellants in 1911, when their buildings aforesaid were taken down, to erect new buildings so as to cover the whole of said eleven by fifty-foot strip of land; but it then developed that the city of Richmond, through its street department, claimed that there had been a dedication of the whole of such strip by its owners to the public for the purpose of widening said alley for public travel.

This was the first actual knowledge or notice which appellant, or those under whom they derive title to said lot, had of any such claim on the part of the city or of the public. And there is no evidence that the city, prior to this time, ever made any actual specific claim that such strip of ground was, or actually exercised any acts upon it as if it were, a public way, except the sole circumstance that a map of the city of Richmond, known as the Pleasants map, adopted by the council of the city in 1872, and which was on file in the city engineer's office, showed the alley in question extending its whole length as of a width of approximately seventeen feet, when such map is scaled; but there is no evidence that the appellants, or any of those

under whom they derive title, ever had any knowledge or notice of the existence of such map prior to said claim of the city in 1911.

However, upon conference and correspondence between the parties the city yielded any claim to three feet in width of said strip lying along what had been the south line of said 310 north Seventh street building, which three-foot width of ground had been occupied by said basement areas, and board walk, leaving a strip of approximately eight feet in width by fifty feet in length at the rear of said Keppler lot, abutting fifty feet on said alley, which is the ground in controversy in this suit between the appellants and the city.

Other evidence and absence of evidence bearing on the points in controversy in the cause are referred to below in the opinion of the court.

*Daniel Grinnan* and *Coke & Pickrell,* for the appellants.

*H. R. Pollard* and *James Lewis Anderson,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

The argument in this case has covered many subjects; and the law bearing upon the essential requisites in such a case as this, both of a dedication on the part of the land owner and an acceptance on the part of the public, whether actual, or implied in fact or in law, or dispensed with by law, has been ably discussed by learned counsel on both sides of the cause and numerous authorities have been cited. But after all we find but little difference between counsel as to the legal principles involved. They differ for the most part as to the facts and as to the application thereto of well settled legal principles.

76

We may say also, at the outset, that, since in our view of the case a preponderance of the evidence does not establish that there was ever a dedication of the land in question for a public use, we shall not enter in this opinion upon the question of whether there was a valid acceptance of the land for public use on the part of the city or of the public. We may assume, so far as the questions we have to decide in this cause are concerned, that its charter provisions and its ordinances, and the city map of 1872, relied on by the city, are sufficient to have constituted a valid acceptance, if there had been a dedication of the land in question for use as a public alleyway.

Confining our consideration, therefore, to the question of dedication, with the exception of what is hereinafter said concerning the right by prescription which is also relied on by the city, and concerning certain questions of evidence, we shall consider the positions taken by the parties and pass upon the questions raised by the assignments of error in their order as stated below.

[1] 1. Does the charter provision of the city of Richmond, presently to be quoted, have the effect of concluding, in favor of the city, the question of dedication?

Section 24 of the charter of the city of Richmond (Acts 1869-70, p. 120, 128), so far as material to the question under consideration, provides as follows:

"24. Whenever any * * alley * * shall have been opened to and used by the public for a period of five years, the same shall thereby become a * * alley * * for all purposes, and the city shall have the same authority and jurisdiction over and right and interest therein, as they have by law over the * * alleys laid out by it. * *."

The following authorities are cited to sustain the position of the city that such charter provision is conclusive that there was a dedication in the case before us, namely: 3 McQuillin Mun. Corp., sec. 1303; *Bolger* v. *Foss*, 65 Cal.

250, 251, 3 Pac. 871; *So. Pac. Co.* v. *City of Pomona*, 144 Cal. 339; 77 Pac. 929; *Ellsworth* v. *City of Grand Rapids*, 27 Mich. 250; *Campau* v. *City of Detroit*, 104 Mich. 560, 562, 62 N. W. 718; *Speir* v. *Town of New Utrecht*, 121 N. Y. 421, 24 N. E. 692.

It is undoubtedly true that city charter provisions such as that above quoted are valid as statutory law, and where the provisions apply they are conclusive evidence of dedication.

In all of the cases cited and above named, however, the public user was unequivocally a public and an adverse public user for the statutory period before the private use in suit was sought. These authorities go no farther than the holding that such a public user, by virtue of statute giving mere public user such effect, dispenses with all need of evidence of an actual dedication, and that the defense that there was no dedication in fact is not available to the landowner in such a case.

Moreover, all of the said authorities involve charters or statutes which contain merely the provision that a user by the public for the period prescribed therein shall, in substance, confer a right of way upon the public.

In the charter provision we have under consideration something more is added, namely, that the alley must be "opened to" as well as "used by the public," for the period named therein, before the provision becomes operative. This added provision must be given some meaning, and it differentiates the case before us from those covered by the authorities cited on the point. Such provision is similar to that of the charter of the city of Brooklyn, which is construed in *Strong* v. *Brooklyn*, 68 N. Y. 1. That provision is as follows: "That all streets and avenues in said city which have been or may be thrown out to public use, and have been or may be used as such for five years continuously, should be deemed public streets and avenues, and that the city of-

ficers should have jurisdiction and power in respect thereto, the same as if such streets and avenues have been or shall have been opened by proceedings had for that purpose." That decision holds, in substance, that such a charter provision requires the same evidence of dedication, to put it in operation, as the law requires to raise an implication of a common law dedication from mere user of a way.

We are of opinion that the charter provision of the city of Richmond under consideration should receive the same construction.

The question under consideration must, therefore, be answered in the negative.

[2] 2. Has the city by public user acquired the right of a public easement in the land in controversy by prescription?

Under all of the authorities the user must be under a claim of right and must also be unequivocally adverse in order that the public may acquire the right in question by prescription. 22 Am. & Eng. Ency. L. 1190, 1192; Jones on Easements, sec. 267; 3 McQuillin Mun. Corp., sec. 1299; 1 Elliott on Roads and Streets, sec. 194; *Skeen* v. *Lynch,* 1 Rob. (40 Va.) 186, 194; *Harris' Case,* 20 Gratt. (61 Va.) 833; *City of Richmond* v. *A. Y. Stokes,* 31 Gratt. (72 Va.) 713; *City of Richmond* v. *Gallego Mills,* 102 Va. 165, 45 S. E. 877.

As we shall see below, such adverse user did not exist in the case before us, and, hence, this question must be answered in the negative.

3. Are the following named deeds in the chains of title of lots abutting in the rear on said alley, other than the Keppler lot (with the owners of which appellants are not in privity), and the provisions in such deeds quoted below, admissible in evidence against appellants? And, if so, what is the effect of such evidence?

(a) The first mention which we find in the record of

an alley, the northern side line of which is so located that
if extended to Seventh street it would include the land in
controversy, is found in a deed of date of November 30,
1849, to Abraham Hirsh from Wm. H. McFarland and John
E. Blair, trustees under a deed of trust from one John B.
Richardson, securing the payment of certain indebtedness
of the latter, which deed conveyed the lot marked 627 on
the plat accompanying the above statement. At this time
McFarland owned individually a lot fronting on Grace
street which abutted in the rear on the alley shown on said
plat, across from and opposite the rear of such lot 627.
That is to say, before the Hirsh deed such alleyway ran
past the rest of lot 627 and extended out to Seventh street,
as shown on the above plat. The evidence which is set forth
in the above statement shows that this alley, at the time
of the Hirsh deed, was certainly an alley in common, if not
a public alley.

It is necessary for us to decide in this cause whether such
alley was the former or the latter character of alley. We
shall hereinafter refer to it as the old alley or alley in com-
mon. So considering it, the right of use of it was at the
least an easement which was appurtenant to lot 627, as well
as to the other lots on both sides of such alley and abutting
thereon, including the Keppler lot.

This alley was, as aforesaid, referred to in a number of
the conveyances establishing it as being a "10 foot alley,"
but as explained in the above statement, it was in fact ap-
proximately twelve feet wide as located on the ground in ac-
cordance with such conveyances. The deed of Hirsh afore-
said, however, contained the following language in its de-
scription of the metes and bounds of lot 627, viz: "bounded
on the south by an alley, which separates the premises
hereby conveyed from the lot of said McFarland, but the
southern line of the premises hereby conveyed shall be ex-
tended ten (10) feet further south to the centre of said

alley, *provided the said alley east of the premises hereby conveyed shall be closed, or the use thereof to the premises be withheld;* and upon the happening of these events, or either of them, the right or title to the said ten (10) feet of ground extended as aforesaid, shall be vested in the said Hirsh, his heirs and assigns forever." (Italics supplied.)

At the time of the Hirsh deed the Keppler lot belonged to said John B. Richardson but was not conveyed by said deed of trust under which the deed to Hirsh was made.

At such time the situation also was that much more than eleven feet of the rear end of the Keppler lot was vacant and doubtless uninclosed. There was then an open space across the rear end of the Keppler lot much wider than eleven feet.

[3] We are of opinion that the Hirsh deed was not admissible in evidence, on the ground that its recitals are binding on appellants, under the rule applicable to recitals or declarations in deeds to which the parties to a cause are parties or privies, since there is no privity of estate between the appellants and the owners of the property conveyed by the Hirsh deed. But—

[4-6] We are of opinion that the Hirsh deed (being over thirty years old), was admissible in evidence against appellants, although they are not in privity therewith, under the exception which ancient deeds afford to the rule as to inadmissibility of hearsay evidence. It is admissible in evidence for what it may be worth because of its declaration that the rear line of the lot it conveyed was on an alley. This is a declaration in the nature of a general reputation, or a traditional declaration, in regard to the fact that an alley existed at an ancient time in that location, either a public alley, or one in which a number of persons had an interest, being indicated  Such declarations in ancient deeds are admissible in evidence although they go beyond a description of monuments marking the mere boundary lines of the land conveyed by such deeds. Jones on Evi-

dence, sec. 301; 1 Greenleaf on Evidence (16th ed.), sec.
128, 139; *Morris* v. *Callanan,* 105 Mass. 132; 2 Elliott on
Evidence, 1278. In the case of such declarations in such
deeds, the same principle upon which the authorities hold
that hearsay evidence is admissible to prove boundary lines
(*Carruthers* v. *Eldridge's Ex'r,* 12 Gratt. (53 Va.) 670;
*Nowlin* v. *Burwell,* 75 Va. 551; *Harriman* v. *Brown,* 8 Leigh
(35 Va.) 697, and many other Virginia cases on the sub-
ject) is pushed, in its application, a step farther, so as to
admit traditional evidence, not only that a certain tree or
other monument marked a certain boundary line, but that
a public body of land, such as a manor, or parish, or high-
way, or the like, or even that a private body of land in which
a number of persons have a common interest, marked such
boundary line, where the declaration comes from one having
such common interest. 1 Greenleaf on Evidence, sec. 138-a.
A public alley, or an alley in common, as marking the boun-
daries of abutting property owners, may be a subject upon
which such traditional declarations may be admissible in
evidence as tending to prove their existence in such cases,
under such extension of such principle. See to the same effect
1 Elliott on Roads and Streets, sec. 198, where it is said:
"*. * * a deed between third parties referring to a way
has been * * held competent upon the question of the
location and existence of the way as a matter of public and
general interest upon which reputation is admissible." Cit-
ing authorities.

[7] But, as stated by 1 Greenleaf on Evidence, sec 139,
such evidence is "not entitled to much weight * *" It
may, therefore, be rebutted by very slight evidence of a
more definite character.

And we find within the clause of the Hirsh deed itself
above quoted the rebuttal of any inference which might
otherwise be drawn therefrom that the ten feet in width
to the north of the old alley aforesaid, to which it refers,

was at that time a public alley, or an alley in common, or a part of such an alley. It is apparent from the reading of such clause that such deed contains merely a conditional dedication or appropriation of a strip of land at the rear of the lot thereby conveyed to be added to the previously existing old alley in that location so as to make such alley twenty feet wide, instead of ten feet as theretofore delimited by the conveyances of abutting property owners along its course as aforesaid; and the condition was that "the said alley east" of the lot 627 (which clearly meant a strip from the southern end of the Keppler lot adjacent and in addition to the old alley existing there, as aforesaid, so as to make such alley at that location and all the way out to Seventh street twenty feet wide), should not "be closed or the use thereof to the * * (lot 627) * * be withheld." And the deed provided, in substance, that "upon the happening of these events or either of them," the proffered dedication or appropriation of the extra ten feet in width of land to widen the old alley at the rear of the lot 627 should stand withdrawn. This recognized the right of the owner of the Keppler lot, as existing at that time, to close or withhold the strip of land now in controversy in this cause from the use of it as an alley. So that instead of being evidence against the appellants on the subject of dedication, it is a circumstance in their favor.

Subsequently, the deed of 1851, quoted from in the statement preceding this opinion, conveyed the Keppler lot by metes and bounds, which, by well established rules of construction of deeds, extended the lot back to the old alley; and such deed furnishes convincing evidence that up to the date thereof, in 1851, there had been no dedication by the owners of the Keppler lot of the strip of land in controversy for use as a public alley, or any appropriation of it by them as an alley in common.

[8]   (b)   The city relies upon three other subsequent

deeds in the chain of title of said lot 627, or of portions thereof (with which deeds the appellants are not in privity), two dated in 1896 and the other in 1909, the first of which deeds described the real estate conveyed as abutting on an alley "20 feet wide," and the other two of such deeds describing such alley as a "public alley, 20 feet wide." These deeds, however, being less than thirty years old, were inadmissible in evidence against appellants under the authorities aforesaid.

(c) The city also relies upon two deeds in the chain of title of the Young Men's Christian Association to that portion of its real estate shown on the plat preceding this opinion which is on the corner of Grace and Seventh streets, and extends back to said long existing old alley on the opposite side of it from the strip of land in contro-versy in this cause; one of such deeds being of date December 2, 1861, and the other of date January 16, 1868, which describes the lot conveyed as running back a certain distance to "a wide paved alley."

[9] We are of opinion that these deeds were admissible in evidence as containing the declaration with respect to the alley being "a wide * * alley," on the same ground as that above noted on the subject of the admissibility in evidence of the Hirsh deed. But manifestly the probative value of such evidence is even less than that of the Hirsh deed, since it gives no definite width. The actual width of twelve feet of the old alley aforesaid might satisfy such description, since such width was in excess of the record width thereof aforesaid, of which the grantors in such deeds were doubtless aware as their deeds themselves refer to the chain of title to the lot being conveyed, in which chain of title appears of record deeds which refer to such alley as a "10 foot alley." It may well be that the language "a wide * * alley," was used in the deeds in question because the grantors therein knew from their chain of title that, by the en-

77

croachment above mentioned on the front, or fronts, of the lots which abutted on the old alley, the actual location of the latter had made it wider than ten feet, but how wide they did not accurately know. And the evidence, to say the least of it, leaves it equally probable that it was for that reason that such deeds did not refer to any exact width as being the width of the alley, as the older deeds in their chain of title did, but referred to it as "a wide * * alley," rather than that such reference was intended as a declaration that such alley was a public alley. And as to the reference of the two deeds in question to an "alley," the presence there of the old alley aforesaid satisfied that description, so that any inference that such description referred to a public alley is thereby rebutted.

We come now to consider the principal question involved in this cause, and that is—

[10, 11]    4. Has the user by the public of the strip of land in controversy been sufficient to raise the implication or presumption of a dedication of it to the public?

Since, as we have above seen, neither its charter provision above mentioned nor prescription has conferred upon the city of Richmond or the public the easement in question, the city must rely upon a common law dedication. There are two classes of such dedications, express and implied. The intent to dedicate is essential to both classes in order to complete a dedication. The city in this cause must rely upon an implied dedication, since there is no evidence tending to show that there was ever any express dedication. An implied dedication is not founded upon a grant, nor does it necessarily pre-suppose one. It is founded on the doctrine of estoppel *in pais.* 1 Elliott on Roads and Streets, sec. 132-7; *Benn* v. *Hatcher,* 81 Va. 25, 29, 59 Am. Rep. 645; *City of Norfolk* v. *Nottingham,* 96 Va. 34, 30 S. E. 444; 2 Greenleaf on Evidence (2d ed.), sec. 662; and many others of the authorities elsewhere cited.

[12]  It is very true that the intent to dedicate which may be implied need not have actually existed in the mind of the land owner.   One is presumed to intend the usual and natural consequences of his acts.   Hence, where public or private rights have been acquired upon the faith of conduct of the landowner under such circumstances as to make the doctrine of estoppel applicable, the law will imply the intent to dedicate even where there is an entire absence thereof in the mind of the landowner, and even against a contrary intent.   1 Elliott on Roads and Streets. sec. 142, 146; *City of Richmond* v. *A. Y. Stokes & Co.,* 31 Gratt. (72 Va.) 713; *Gillespie* v. *Duling,* 41 Ind. App. 217, 83 N. E. 728; *Morgan* v. *Railroad Co.,* 96 U. S. 716, 723, 24 L. Ed 743; *Tise* v. *Whitaker-Harvey Co.,* 146 N. C. 374, 59 S. E. 1012; 4 McQuillan Mun. Corp., sec. 1561; *Champ.* v. *Nicholas County,* 72 W. Va. 475, 78 S. E. 361; *City of Los Angeles* v. *McCollum,* 156 Cal. 148, 103 Pac. 914, 23 L. R. A. (N. S.) 378.

In the cause before us we cannot inquire or decide whether the doctrine of estoppel aforesaid is applicable in favor of any private owners of lots abutting on the alley in question, since no such parties are before us.   With respect to the city, the facts in evidence disclose that the city has acquired no property nor made any expenditure on the faith of the strip of land in controversy being a public alley or a part of such an alley.   The sole ground on which it must rely in this cause for the application of said doctrine of estoppel is the long continued user by the public, as it claims, of said strip of land as a public alley or as a part thereof.

[13]  Now it is well settled that where public user is relied on to establish dedication, the user must be of such a character "as would indicate to prudent men that the public claim is, as of right, to the way as a street or road, and that the owner *is fully aware of the extent and character of the*

*use* and makes no objection * * *." (Italics supplied.) 1 Elliott on Streets and Roads, sec. 179. To the same effect see 4 McQuillin Mun. Corp., sec. 1563, 1564; *Harris' Case,* 20 Gratt. (61 Va.) 833; *Talbott* v. *Richmond & Danville. R. Co.,* 31 Gratt. (72 Va.) 685. The actual knowledge aforesaid on the part of the owner need not be proved; but the user must be of such an adverse character that it may be reasonably expected to convey such knowledge to owners of the property affected if they are alive to their own interests.

As said in *Harris' Case, supra,* 61 Va. (20 Gratt.) at p. 840: "Where no public or private interests have been acquired upon the faith of the supposed dedication, the mere user, by the public, of the supposed street or alley, although long continued, should be regarded as a mere license, revocable at the pleasure of the owner; unless, indeed, there be evidence of an express dedication; or unless, in connection with such long-continued user, the way has been, by the proper town authority, recognized as a street, *so as to give notice that a claim to it as an easement was asserted.".* (Italics supplied.)

[14, 15] In the cause before us the preponderance of the evidence is to the effect that the city authorities never graded, paved, repaired the paving on, laid or repaired any sewer on, or did any other overt acts whatsoever upon the strip of land in question "so as to give notice that a claim to it as an easement was asserted." The sole act of the city authorities which could be regarded as having any tendency to give notice of such a claim was the adoption by the city council in 1872 of a map or plan of the city on file in the city engineer's office, which was on a small scale, and which upon close inspection showed an alley at the location of the ten-foot alley above referred to, which was in fact approximately a twelve-foot alley as actually located on the ground as aforesaid. A careful scaling of this map discloses that such alley, as shown thereon, is approximately seventeen

feet wide. But so far as the evidence goes, the appellant and those under whom they derive title had no notice of such disclosure of such map until the controversy involved in this cause arose, and if they had had prior notice of the contents of such map they might readily have taken the alley aforesaid shown thereon to have been the long existing old alley aforesaid, which did not embrace the land in controversy. Hence, such map is not of that character of evidence which is necessary in such a case to give the requisite notice aforesaid of the claim of easement in order to raise a presumption of dedication. As said by Judge E. C. Burks, speaking for this court, in *Talbott* v. *Richmond & Danville R. Co., supra,* 72 Va. (31 Gratt.) at p. 688: "Intent is the vital principal of dedication. In a case where acts and declarations are relied on to show such intent, to be effectual, they must be unmistakable in their purpose and decisive in their character; and in every case it must be unequivocally and satisfactorily proved. (Citing authorities.) And this would seem to be the right guide to judicial interpretation in such cases; for we know that individual owners of property are not apt to transfer it to the community, or subject it to public servitude, without compensation, and such donation is not to be readily inferred." To the same effect, 4 McQuillin Mun. Corp., sec. 1368, 1369; *City* v. *Lessee of White,* 6 Pet. 431, 8 L. Ed, 452; *Buntin* v. *Danville,* 93 Va. 200-204, 24 S. E. 830; *Winchester* v. *Carroll,* 99 Va. 739-740, 40 S. E. 37; *Macon* v. *Franklin,* 12 Ga. 239; *West Point* v. *Bland,* 106 Va. 792, 56 S. E. 802.

[16] As to the user by the public of the land in controversy as an alley, such use was not unequivocally a use as of right. On the contrary, the evidence is convincing that such strip was left unbuilt upon prior to 1860 merely because it was not needed for building purposes; and it was so left in 1860 as a private convenience appurtenant to the adjacent building belonging to the same owner, in order to afford a

side entrance to both the first and second floors of such building.  Such use of such strip was a valuable one to the owners of it during the whole time from 1860 to 1907, and that use, even if we left out of view other uses to which they put a part of such strip, satisfactorily accounts for its having been left uninclosed and unbuilt upon up to the time the building was torn down in 1911, and negatives any presumption of dedication to public use.

Since 1911 the facts leave no room for any presumption of dedication, and no claim is made on the part of the city that any dedication occurred since that time.

And with respect to the user by the public of the land in controversy, the whole of such user is satisfactorily accounted for by the existence of the old alley aforesaid adjacent thereto, without the need for any implication of a dedication of such strip to public use.  Whether that alley was a public alley, or merely an alley in common appurtenant to the abutting property, is immaterial on that subject.  Indeed, to what extent public use was made of said strip itself is left vague and undetermined by the evidence.  Much of the public user in question was doubtless of the old alley aforesaid; and such of it as invaded the strip of land in controversy, the evidence leaves equally consistent with being a user permitted by the landowners for their own private advantage, or a user in common with their private use, as with its being an adverse user by the public.  Such public user, therefore, as there may have been was not, as aforesaid, unequivocally such, but the contrary.  The act of the appellants and those under whom they derive title in assenting to such public user was, therefore, not unequivocal in its meaning.

There are many other facts and circumstances in evidence not mentioned in this opinion or in the statement preceding it, which would tend to strengthen, and none of

them tend to weaken, the position we have above taken, but in the view we have taken of the case they are immaterial, and, hence, are not stated.

We conclude, therefore, that the question under consideration must be answered in the negative.

For the foregoing reasons, we are constrained to reverse the decree complained of, and we will enter a decree to the effect that we are of opinion that a preponderance of the evidence in the cause sustains the bill, and shows that no dedication to the public has been made of the eight-foot strip of ground in the bill and proceedings mentioned; that the appellants are the owners in fee of such strip of ground, as against the city of Richmond and the public; and that such city be perpetually enjoined and restrained from interfering with the rights of the appellants therein and thereto.

*Reversed.*