# Richmond

## CITY OF HAMPTON, VIRGINIA v. P. V. STIEFFEN.

June 12, 1961.

Record No. 5258.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

The opinion states the case.

*John D. Gray, City Attorney,* for the appellant.

*Eugene M. Jordan (Kearney, Cofer & Jordan,* on brief), for the appellee.

SNEAD, J., delivered the opinion of the court.

On November 19, 1958, the City of Hampton, appellant, filed its bill of complaint against P. V. Stieffen, appellee, to enjoin him and his agents from blocking and obstructing the free use by the public of a portion of Second street, between Pembroke avenue and Point Comfort avenue, in the Buckroe Beach area of the city. A temporary injunction was awarded appellant requiring appellee to remove the obstructions. The injunction was permitted to expire, and appellee agreed not to obstruct the street again until the case had been finally determined.

Appellee's demurrer to the bill was overruled, and thereupon he filed his answer. In it he alleged, among other things, that he was the fee simple owner of the portion of the street in controversy; that it had never been deeded or dedicated to appellant or its predecessor, Elizabeth City county; that appellant and its predecessor have never acquired an easement over the property by prescription or otherwise, and that he and his predecessors in title had closed the road from time to time. The evidence was submitted by depositions, and after a view of the scene the trial court found by its decree of July 5, 1960, that the portion of Second street in controversy "has not been opened continuously and uninterrupted for a period of twenty (20) years in which to establish it as a public right of way through a prescription nor has there been a dedication by the owners to the City of Hampton nor its predecessor, Elizabeth City County, Virginia. * * * as a public right of way." Appellant's prayer for a permanent injunction was denied and the bill was dismissed. From this decree, we granted appellant an appeal.

The crucial question presented is whether there has been a dedication of that part of Second street in dispute by appellee or his predecessors in title, thus making it a public right of way.

The area with which we are concerned may be described as follows: Chesapeake boulevard fronts on the beach of Chesapeake Bay and extends in a northerly and southerly direction. Second street parallels Chesapeake boulevard two blocks back, or to the west.

Point Comfort avenue (formerly Old Point avenue) and Pembroke avenue (formerly Bay avenue) are parallel, begin at Chesapeake boulevard, extend in a westerly direction and are one block apart. In the area bounded by these two avenues and Chesapeake boulevard on the east and Second street on the west, there is an amusement park owned by appellee. First street is one block west of Chesapeake boulevard and runs in a northerly and southerly direction, but it comes to a dead end at each side of the amusement park. On both the Chesapeake boulevard side and the Second street side of the amusment park the block is 600 feet in length. Appellee also owns property on the western side of Second street beginning at the south-western corner of the intersection of that street with Pembroke avenue, running south 400 feet and extending back to Third (Mallory) street, which bounds it on the west. This property is used as a parking lot, and is part of a block which fronts 600 feet on the western side of Second street. On the southerly 200 feet of that block which fronts on Second street there are cottages known as "Todd's Cottages". The part of Second street in dispute is that contiguous to the 400-foot frontage appellee owns on the west side and 400 feet of his 600-foot frontage on the east side of the street.

According to the city engineer's plat introduced, the entire 600-foot length of Second street is improved with hard surface 24 feet wide. On each side of the hard surface there is a drainage ditch. There are six public street lights, five city no parking signs, a stop sign, a 72-inch storm sewer, a 10-inch sanitary sewer and some manholes located in this section of the street. On both sides of the street appellee's properties are enclosed by a fence. Next to and outside of the fence on the east side of the street is a sidewalk which leads to the entrance of the amusement park. On the same side several feet from the hard surface there is an island, with a concrete curb, approximately 20 feet wide and 135 feet long which begins about 75 feet south of Pembroke avenue and has thereon bus stop signs, street lights, and trees in the center. To the south and north of it there are concrete entrances to the park. On the opposite side there is also a concrete entrance to the parking lot.

H. L. Gordon testified that he has been familiar with the area "ever since the turn of the century"; that Second street has been in existence since the beginning of his recollection; that there was a fish packing plant located on the northwest corner of Second street and Point Comfort avenue, where Todd's cottages now stand; that patrons

drove into the packing house off Second street; that he has owned property at the intersection of Second street and Comfort avenue since 1913, and the street has been used as access to his property, and that he had never known the street to be closed to the public.

Mrs. Lillian Benthall, who has lived nearby since 1910, and operated part of the time concessions and a hotel, stated that she was familiar with Second street; that she has "always known it to be a street", and that from 1910 to 1947 she had never known it to be closed to the public. Frank H. Roberts, age 85, testified that when he was a boy he lived during the summer time on the corner of Point Comfort avenue and First street, and that to his knowledge the street was not closed to the public. J. J. Lewis, who has lived at Buckroe Beach for 53 years, and now resides a block from Second street and Point Comfort avenue, said that to his knowledge Second street has been open to the public for approximately 53 years, except once when it was closed for sewer construction.

William H. Hunnicutt, Director of Public Works for the City of Hampton, testified that he had been connected with the department since November 1952, and that prior to that time he was associated with the Virginia Department of Highways assigned to the Newport News area, which embraced Elizabeth City county. He explained from the city engineer's plat the physical set up of Second street between Point Comfort avenue and Pembroke avenue as has been hereinbefore described, and estimated the improvements would amount to approximately $8,000 at present day costs. Hunnicutt further testified that since he had been with the department, to his knowledge, other than placing the traffic signs and increasing the street lights from 2,500 to 6,000 lumens, the city had put none of the improvements on the 400-foot section of Second street here involved but had maintained it; that the storm sewer was installed in the street by the Hampton Roads Sanitation District Commission; that he was not advised as to who made the other improvements because they were there when he was employed by the city, and that he was "quite sure" appellee constructed the concrete entrances, because normally persons whose property abut streets make such improvements.

John I. Frost, deputy clerk of the Circuit Court of the City of Hampton, was called by appellant to produce minutes of the Board of Supervisors of Elizabeth City county, and also certain court proceedings. The Board's minutes of June 27, 1934, showed that Vir-

ginia Public Service Company, which was the predecessor in title to the property owned by appellee at the time the present suit was instituted, and others petitioned the Board to close Chesapeake boulevard (the street parallel to and just east of Second street) between Pembroke avenue and Point Comfort avenue, for the summer months, and suggested that that portion of Second street now in dispute be opened for public traffic as it would be sufficient to take care of traffic which ordinarily used Chesapeake boulevard. At a later meeting held on July 31, 1934, the Board passed a resolution closing Chesapeake boulevard as suggested. Frost was asked by counsel for appellant to refer to the minutes of September 26, 1934, with reference to a letter received by the Board from the State Highway Department. The minutes showed that the letter advised that Route 169 was extended from Old Point avenue "along the line of Chesapeake Boulevard to Bay Avenue, thence along Bay Avenue to Second Street, and thence along Second Street to Old Point Avenue, making a loop. This is taken into the primary road system of the State under the 2½ Clause allocations made this year."

At a meeting on May 29, 1935, Virginia Public Service Company, through its representative Leo Kelly, stated that the State Highway Commission had agreed to close the block of Chesapeake boulevard from May 30, 1935, to September 2, 1935, provided there was no objection thereto on the Board's part. The Board expressed unanimous approval. The Highway Department erected a barrier across Old Point avenue at the intersection of Second street which diverted traffic into Second street, and at a meeting of the Board on June 26, 1935, C. B. Wagoner, whose business establishment was below the barricade, stated that the barricade was seriously handicapping the operation of his business as well as others. Whereupon, the Board by resolution requested the Highway Department to remove the barricade so as not to interfere with the operation of business on Old Point avenue.

Frost further testified concerning a decree of the Circuit Court of Elizabeth City County, dated May 2, 1939, in the chancery suit of Board of Supervisors of Elizabeth City County v. State Highway Commissioner of Virginia, et al. By the decree, the court held that Chesapeake boulevard, between Bay avenue and Point Comfort avenue was a part of the State Highway primary system known as Route 169, and that this section of the highway had been barricaded during the summer months of each year since 1934, contrary to law. The defendants were enjoined from obstructing its use by vehicular

traffic. In the suit papers was a map of Buckroe Beach drawn by Virginia Public Service Company, dated June 4, 1937, which shows Second street between Point Comfort avenue and Bay avenue, and it is designated as State Highway Route 1207.

Appellant introduced as an exhibit a map published and circulated by Buckroe Beach Business Bureau. It shows the location of its members and the public streets, including Second street here involved. Also introduced was a letter, dated May 5, 1959, written by W. F. Smith, Urban Engineer for the State Highway Department, addressed to counsel for appellant, in which it was stated that the records show that Second street, including that portion now in controversy, was taken over by the Department as a secondary road on July 1, 1932, and that the records did not show a breakdown of expenditures, but it appeared "obvious" that the road was maintained by the Highway Department until it was consolidated into the City of Hampton on July 1, 1952.

Ralph Dixon, a witness for appellee and a former member of council for the City of Hampton, recalled that Second street was temporarily barricaded near Pembroke avenue about once a year for several years around 1920; that he would remove the barricade in order to get through, and that Charlie Smith, caretaker of the amusement part would "bawl me out"; that he thought the street was hard-surfaced about the year 1925; that since that time he did not remember the street being closed to the public, and that his father, who was a member of Elizabeth City County Board of Supervisors, always contended it was "an open public thoroughfare."

Mrs. Myrtle Franklin, daughter of Charlie Smith, said that she had lived in the area for fifty years, that her father barricaded Second street for twenty-four hours after Labor Day each year for fifty years, and that the public would use the street daily, except when barricaded, to go to the "ice house". Her son, Chauncey Franklin, an employee of the city Sergeant, testified that he recalled Second street was barricaded for twenty-four hours each year until 1930, when he severed his summer employment with the amusement park; that as long as he could remember there had been a fence on each side of the street; that the street was used by the general public, and that it was common knowledge it had to be closed to keep it from being a public street.

Jarvis M. Hearn, who leased the parking lot from appellee, recalled that Second street had been barricaded in 1928, 1947, 1948,

and in 1958. Bernard R. Milton, who was employed as a maintenance man for the amusement park from 1927 to 1940, said that he closed both ends of the disputed section of the street in April of each year for about twenty-four hours during his employment there. He did not recall Chesapeake boulevard being closed except one summer around 1934. He stated that the street was "black topped" around 1935, but he did not know who made the improvements, that at one time there was a barbed wire fence across the street which was removed in 1927.

Appellee testified he acquired the property in April 1943. It was, however, conveyed in three separate parcels to him by deed from Buckroe Beach Resort, Incorporated, dated December 18, 1944. The land had formerly been conveyed by Virginia Public Service Company to Buckroe Beach Resort, Incorporated, of which latter corporation appellee was the sole stockholder. The first parcel describes the parking lot area, which is bounded on the north by Pembroke avenue; on the west by Third street, on the south by Todd's property, and on the east by the west line of Second street "if it were opened up and dedicated". The second parcel describes the amusement park area, which is bounded on the north by Pembroke avenue; on the west by the east line of Second street "if the same were opened up and dedicated"; on the south by Point Comfort avenue, and on the east by Chesapeake boulevard. Both of these parcels were conveyed with general warranty of title. The third parcel was by special warranty of title. It embraced all rights, title, privileges and easements which the grantor had or might have in and to all of the streets contiguous to the first and second parcels conveyed.

Appellee said that he barricaded Second street for more than twenty-four hours in 1945, 1948, 1951 and 1958; that no objections were made except to the latter closing; that between 1943 and 1944 Hampton Roads Sanitation District Commission asked his permission to install the 72-inch sewer and he consented provided they "put the street back where it is"; that at that time the street was "just oyster shells"; that after installation of the sewer the Commission "black topped it"; that since then the city has not repaired it except during 1958 when it filled some holes, and that previously he had placed gravel on the street and kept it clean. He stated that he constructed the concrete entrances, the curb around the island and the sidewalk; that he had requested the county to construct a curb before he constructed the sidewalk, but it refused; that the island and

concrete work around it cost him $4,000; that he installed two manholes and a sewer from his property to the main sewer for a distance of 50 feet, and that he thought the 10-inch sewer was installed fifty years ago.

Appellee further testified that he did not know of any maintenance work having been done by the State Highway Department; that the street lights were not installed at his request, but he did not object to them, and that the light bill is not paid by him. He explained that the purpose of the fence around the parking lot was to facilitate the collection of fees, and around the amusement park to protect the public from injury. At his request the police department placed "no parking" signs on the west side of the street. He said that he requested the police to tag cars on Second street; that at first they did, but later refused because "they found out that it was private property and they wouldn't do it any more"; that he paid taxes on the street property, that the city never interfered with anything he wanted to do. When asked if Second street was used for street purposes, he replied: "Not for public. I just opened it and let them come through." Later he was asked: "Do you know any reason why the City would put up street lights on your property or no parking signs or stop signs?" His reply was: "Because it belongs to them."

There are two kinds of common law dedication, express and implied. In order to complete a dedication, it is essential to both kinds that there be an intent to dedicate. "An implied dedication is not founded upon a grant, nor does it necessarily presuppose one. It is founded on the doctrine of estoppel *in pais.*" *Keppler* v. *City of Richmond*, 124 Va. 592, 610, 98 S. E. 747.

In *Buntin* v. *Danville*, 93 Va. 200, 204, 24 S. E. 830, it is stated: "* * * The intent is its vital principle, and the dedication may be made in every conceivable way that such intention may be manifested. It must, however, be manifested by some unequivocal act, and is not effectual and binding until accepted. When the intention of the owner to make the dedication has been unequivocally manifested, and there has been acceptance by competent authority, or such long use by the public as to render its reclamation unjust and improper, the dedication is complete." (Citing cases.)

In *Keppler* v. *City of Richmond, supra,* at page 611, we said: "* * * [T]he intent to dedicate which may be implied need not have actually existed in the mind of the land owner. One is presumed

to intend the usual and natural consequences of his acts. Hence, where public or private rights have been acquired upon the faith of conduct of the landowner under such circumstances as to make the doctrine of estoppel applicable, the law will imply the intent to dedicate even where there is an entire absence thereof in the mind of the landowner, and even against a contrary intent." (Citing cases.)

■ Since the trial court's decree was based on testimony in deposition form, the rule to be applied on appeal is as stated in *Klingstein* v. *Eagle*, 193 Va. 350, 353, 68 S. E. 2d 547. There we said: "On the testimony in deposition form, the decree is presumed to be correct and should not be disturbed for lack of proof if the controlling factual conclusions reached are sustained by a fair preponderance of the evidence."

■ Here the record shows that the portion of Second street in controversy has been used by the traveling public for at least fifty years; that the 10-inch sewer line was installed in the street by public authorities about fifty years ago, and that there has been a fence on each side of the street for many years. On July 1, 1932, the street was incorporated in the State Highway System and maintained by the State Highway Department until July 1, 1952, when Elizabeth City county consolidated with the City of Hampton. Since that time appellant has maintained the street, and placed traffic control signs there at appellee's request. Street lights were installed which appellee did not object to, and the light bill is paid by appellant.

In 1934 Virginia Public Service Company, appellee's predecessor in title, petitioned the Board of Supervisors to close Chesapeake boulevard between Pembroke avenue and Point Comfort avenue and suggested that traffic be routed through Second street. As a result Chesapeake boulevard at that point was closed for five years during the summer months until 1939, when the Circuit Court of Elizabeth City County ruled that it had been closed contrary to law. The map dated June 4, 1937, prepared by Virginia Public Service Company shows the disputed area to be a street, and the map prepared and circulated by Buckroe Beach Business Bureau indicates it is a public street. The Hampton Roads Sanitation District Commission installed a 72-inch sewer in the street around 1944 and hard-surfaced the roadway at its expense.

We hold that a fair preponderance of the evidence, both oral and documentary, as to the conduct and actions of Virginia Public

Service Company, a predecessor in title of the appellee, and the use and maintenance of Second street by the public authority shows that there was a dedication and an acceptance thereof by the public authority of that portion of Second street between the parking lot parcel and the amusement park parcel here in controversy, for public use.

The decree appealed from is reversed; and the case is remanded for the entry of a decree not inconsistent with the views herein expressed.

*Reversed and remanded.*