PRESENT: All the Justices

3232 PAGE AVENUE CONDOMINIUM
UNIT OWNERS ASSOCIATION
                                        OPINION BY
 v.   Record No. 112193            JUSTICE CLEO E. POWELL
                                      November 1, 2012
CITY OF VIRGINIA BEACH

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    A. Bonwill Shockley, Judge

     In this appeal, we consider whether a condemnor may, in an

eminent domain proceeding, alternatively assert ownership rights

in the condemned property.  We further consider whether the

evidence in this case was sufficient to support the circuit

court's ruling that the City of Virginia Beach (the "City")

proved an implied dedication of the disputed property.

                          I. Background

     The present case concerns the beach along the Chesapeake

Bay from First Landing State Park to the Lesner Bridge, referred

to as "Cape Henry Beach."  Cape Henry Beach is approximately two

miles long, and has 23 public access easements maintained by the

City.

     In early 2008, Cape Henry Beach was exhibiting signs of

severe erosion.  The City planned to replenish the beach with

additional sand to prevent further erosion.  In order to

accomplish this, the City asked the U.S. Army Corps of Engineers

                               1

to pump sand dredged[1] from the Lynnhaven Inlet onto Cape Henry Beach. The U.S. Army Corps of Engineers agreed, provided the City obtained a permit from the Virginia Marine Resources Commission ("VMRC") authorizing the pumping of sand onto Cape Henry Beach. The VMRC would not issue such a permit without either the consent of all property owners that abut Cape Henry Beach or a court order granting the City the right of entry.

On December 9, 2008, the Virginia Beach City Council passed an ordinance authorizing:

> the acquisition by purchase or condemnation, pursuant to Sections 15.2-1901, et seq., and Title 25.1 of the Code of Virginia of 1950, as amended, of public beach easements (the "Easements") for public recreation and shore protection as stated above and for other related public purposes for the preservation of the safety, health, peace, good order, comfort, convenience, and for the welfare of the people in the City of Virginia Beach, across the areas of the Cape Henry beaches, to the extent that public easements or property ownership are not already confirmed . . . .

To facilitate the acquisition of the required easements, the ordinance specifically authorized the City Manager:

> to make or cause to be made on behalf of the City of Virginia Beach . . . a reasonable offer to the owners or persons having an interest in the property that will be affected by said Easements. If refused, the City Attorney is hereby authorized to institute proceedings to condemn said Easements.

---

[1] The U.S. Army Corps of Engineers had tentatively planned to begin dredging the Lynnhaven Inlet in 2009.

2

The ordinance further included a list of the seven properties that the City sought to acquire easements upon, one of which was owned by the 3232 Page Avenue Condominium Unit Owners Association (the "Condo Association").  On January 27, 2009, the City sent a pre-condemnation offer letter to the Condo Association, stating:

> The public claims an absolute right to use the sandy beaches along the bayfront north of the seaward toe of the dune or bulkhead line from Lynnhaven Inlet to First Landing Park. Nevertheless, it is our understanding that the [Condo Association] contests this right.  The City of Virginia Beach must clarify the rights of the public in order to proceed with the sand replenishment project.  The City is prepared to file a Petition for Condemnation in order to confirm access to the needed areas in time for the project.

The City further offered to purchase "a beach easement" for $4,000, an amount it described as the easement's fair market value.  The Condo Association rejected the City's offer.

On February 20, 2009, the City filed a "Petition for Condemnation to Confirm Public Easements," seeking to acquire or confirm title to easements on the Condo Association's property. In the petition, the City sought to take or confirm a "perpetual recreational easement and a shore protection/construction easement" (collectively, the "Easements").

In its "Answer and Grounds of Defense and Objections to Jurisdiction," the Condo Association argued that, under the

3

eminent domain statutes, the City could not seek to both quiet title and condemn a property in the same action. In an order dated July 24, 2009, the circuit court overruled the Condo Association's objections and ruled that it would rule on the issue of ownership of the Easements "at or immediately after the hearing to determine just compensation." The Condo Association responded by filing a motion in limine seeking to preclude the City from offering any evidence relating to the ownership issue at the just compensation trial. The circuit court granted the motion.

At the conclusion of the just compensation trial, the jury valued the Easements at $152,000. The circuit court then required the City deposit $150,033.72[2] with the clerk, pending the outcome of the ownership trial.

During the subsequent ownership trial, the circuit court heard evidence that, in 1926, Cape Henry Beach was depicted as "Ocean Avenue."[3] In 1954, however, the Board of Supervisors abandoned Ocean Avenue and the title to the property passed to the adjoining property owners.

---

[2] The $150,033.72 required by the circuit court represented the difference between the amount initially deposited with the clerk ($4,000) and the awarded amount ($152,000), plus the interest that would have accrued ($2,033.72).

[3] According to the witness, it was the standard practice at the time to depict a beach as a road in plats.

The circuit court heard further evidence that, from at least 1976, the City's police force patrolled the entirety of Cape Henry Beach around the clock. Similarly, evidence was presented that, from at least 1980, the City maintained Cape Henry Beach. Such maintenance included daily garbage removal from trash barrels provided by the City, raking the beach to remove litter, grading the beach, annually planting new beach grass and removing dead sea life. The City also presented evidence that the general public used the entire beach. Indeed, there was testimony that, there were times when the beach was so crowded, maintenance workers could not drive vehicles on the beach.

After hearing all of the evidence, the circuit court ruled that the City had "provided evidence necessary to show that the City has attained an easement through implied dedication and acceptance subsequent to the recordation of the plat in 1956." In making its ruling, the circuit court specifically noted that:

> In this case, we have the existence of the public access and, going on after 1956, the regulation of the area of the whole beach, . . . the maintenance of the beach, the patrolling of the beach, . . . and all of those things that are already in evidence.

The circuit court subsequently entered an order allocating the jury award from the just compensation trial to the City.

The Condo Association appeals.

5

## II. Analysis

On appeal, the Condo Association argues that the circuit court erred by permitting the City to maintain a condemnation action on the Easements while simultaneously claiming ownership of the Easements.  The Condo Association also takes issue with the circuit court's determination that the City had acquired the Easements through implied dedication and the circuit court's failure to consider the City's abandonment of Ocean Avenue in 1954.

### A. Condemnation Proceeding

The Condo Association makes three related arguments. First, the Condo Association argues that the trial court erred in allowing the City to use the condemnation proceeding as a surrogate for a declaratory judgment action to determine ownership of the Easements.[4]  Second, the Condo Association contends that, by allowing the City to try title in conjunction with a condemnation proceeding, the circuit court effectively

---

[4] On brief and at oral argument, the Condo Association attempts to frame the "fundamental issue appealed" as whether a condemnor can claim that it already possessed the rights it sought to condemn "[a]fter a just-compensation trial has gone badly."  The record, however, establishes that the City claimed that it already owned the easements before it initiated the condemnation proceedings.  The pre-condemnation offer letter clearly demonstrates this belief, as does the petition for condemnation, where the City specifically states that it "believes that the only persons who are entitled to an interest in the compensation to be ascertained by this proceeding are:" the Condo Association and the general public.

allowed the City to condemn its own property. Third, the Condo Association asserts that, because the City cannot condemn property it already owns, the initiation of a condemnation proceeding necessarily acts as a judicial admission by the City that it did not own the property.

> The statutes confirming the power of eminent domain must be strictly construed, and a locality must comply fully with the statutory requirements when attempting to exercise this right. We consider the language of each statute at issue to determine the General Assembly's intent from the plain and natural meaning of the words used. When the language of a statute is unambiguous, courts are bound by the plain meaning of that language.

Hoffman Family, L.L.C. v. City of Alexandria, 272 Va. 274, 283-84, 634 S.E.2d 722, 727 (2006) (citations omitted).

Contrary to the argument raised by the Condo Association, the City is not attempting to condemn property it already owns, nor was the City's filing a judicial admission that it did not own the Easements. Rather, the City sought to condemn the Easements, the ownership of which was in dispute. An examination of the statutes dealing with condemnation demonstrates that the General Assembly clearly intended to allow a circuit court to determine ownership of the condemned property as part of the condemnation proceeding.

7

Code § 25.1-222[5] provides that, where a controversy exists among the <u>parties</u> regarding the ownership of the property, the ownership rights of the respective <u>parties</u> will be determined "in the manner hereinafter provided in § 25.1-241." Code § 25.1-241[6] also uses similarly general terms, specifically: "claimants" and "persons." Although the term "claimant" is not defined, it is noteworthy that the definition of "[p]erson" applicable to eminent domain proceedings under Title 25.1 specifically includes "the Commonwealth" as well as "any city, county, town, or other political subdivision." Code § 25.1-100.

---

[5] Code § 25.1-222 states:

No delay in the proceeding for the determination of just compensation shall be occasioned by the claims of the parties with respect to the ownership of any land or other property or to the interest therein of the respective parties. In such cases the court shall require the retention of the deposit of the award for the whole property, or the part in dispute, until the rights of the respective parties have been determined in the manner hereinafter provided in § 25.1-241; provided, however, the court shall permit any such claimants to intervene as parties to the proceedings as provided in § 25.1-218.

[6] The relevant portion of Code § 25.1-241 states:

A. If it appears to the court that there exists a controversy among claimants to the fund and any interest accrued thereon, or to the ownership of the property subject to the condemnation, the court shall enter an order setting a time for hearing the case and determining the rights and claims of all persons entitled to the fund or to any interest or share therein.

8

The General Assembly could have limited Code §§ 25.1-222 and -241 to apply only to the respondents of a condemnation proceeding, but it chose not to. Indeed, it is worth noting that the General Assembly provided just such a limitation within other provisions of the condemnation statutes. Under Code § 25.1-243(A), "a party whose property or interest therein is to be taken or damaged" can apply for a withdrawal pendente lite "of the amount deposited for his interest in the property to be taken or damaged." (Emphasis added.) Clearly, this limitation only applies to respondents/condemnees, as a petitioner/condemnor, regardless of whether it is seeking to confirm or acquire ownership in a property, could never be "a party whose property or interest therein is to be taken or damaged."

In the present case, the City and the Condo Association are both "parties" to the condemnation proceeding and there can be no doubt that ownership of the Easements was in dispute. Furthermore, nothing in either Code §§ 25.1-222 or -241 indicates that the General Assembly intended to exclude the petitioner/condemnor from being considered a party, claimant, or person as the terms are used within the statutes. Therefore, under Code §§ 25.1-222 and -241, not only did the circuit court have the jurisdiction to determine the ownership of the property as between the parties, but it was also required to do so.

9

Accordingly, we hold that the trial court did not err in permitting the City to claim it already owned the Easements or in determining the parties' ownership rights as part of the condemnation proceedings.

## B. Implied Dedication

The Condo Association next argues that the circuit court erred in finding that the City had acquired ownership of the Easements by implied dedication. According to the Condo Association, there was no implied dedication of the Easements, as the City failed to prove that the Condo Association acted in a way that unmistakably and decisively showed an affirmative intent to dedicate the property. The Condo Association further asserts that there has been no showing that the use by the public was adverse to and exclusive of its own use and enjoyment of the property. The Condo Association concedes that the City proved that the public used the beach and that the City regularly patrolled and maintained the beach. However, it contends that these facts alone do not prove an implied dedication of the Easements.

> Dedication is an appropriation of land by its owner for the public use. It may be express or implied. It may be implied from long use by the public of the land claimed to have been dedicated. Dedication is not required to be made by a deed or other writing, but may be effectually and validly done by verbal declarations. The intent is its vital principle, and the dedication may be made in every

conceivable way that such intention may be manifested. It must, however, be manifested by some unequivocal act, and is not effectual and binding until accepted. When the intention of the owner to make the dedication has been unequivocally manifested, and there has been acceptance by competent authority, or such long use by the public as to render its reclamation unjust and improper, the dedication is complete.

Buntin v. City of Danville, 93 Va. 200, 204, 24 S.E. 830, (1896) (citations omitted).

Furthermore,

the intent to dedicate which may be implied need not have actually existed in the mind of the land owner. One is presumed to intend the usual and natural consequences of his acts. Hence, where public or private rights have been acquired upon the faith of conduct of the landowner under such circumstances as to make the doctrine of estoppel applicable, the law will imply the intent to dedicate even where there is an entire absence thereof in the mind of the landowner, and even against a contrary intent.

Keppler v. City of Richmond, 124 Va. 592, 611, 98 S.E. 747, 753 (1919).

The Condo Association asserts that, in order to prove implied dedication, the City must prove that the use by the public was "'adverse to and exclusive of the use and enjoyment of the property by the [Condo Association].'" City of Staunton v. Augusta Corp., 169 Va. 424, 433, 193 S.E. 695, 698 (1937) (quoting 8 R.C.L., p. 904, sec. 29).

[W]here . . . the use of the property by the public is not exclusive of the owner's rights, but is consistent and in common therewith, such

11

> use by the public is no proof of an intention to dedicate the property to the public, but is permissive only.

Id. at 436, 193 S.E. at 699. But cf. Keppler, 124 Va. at 610, 98 S.E. at 753 (examining whether use "by the public of the strip of land in controversy [has] been sufficient to raise the implication or presumption of a dedication"); City of Richmond v. A. Y. Stokes & Co., 72 Va. (31 Gratt.) 713, 724 (1879) ("the use of the property by the public, with the assent of the owner, will justify the presumption of dedication if the use has continued so long that private rights and the public convenience might be materially affected by an interruption of the enjoyment."); Harris v. Commonwealth, 61 Va. (20 Gratt.) 833, 839 (1871) ("intent [to dedicate] may be presumed from circumstances connected with a long and uninterrupted user by the public."); Skeen v. Lynch, 40 Va. (1 Rob.) 186, 193-94 (1842) ("The use of property by the public with the assent of the owner, will, under particular circumstances, justify the presumption of a dedication to the public, provided the use has continued so long that private rights and the public convenience might be materially affected by an interruption of the enjoyment.").

We note, however, that in City of Staunton, public use was the only evidence of either dedication or acceptance. Thus, it is clear that the language from City of Staunton cited by the

Condo Association is only applicable where public use is the only evidence of dedication. Where, in addition to long-term public use, there has been an acquiescence in the exercise of dominion and control over the property, this standard does not apply.

> "Where the owner of property abutting upon a city street constructs the building upon his property 3 1/2 feet back from the street line, and paves the same in the same manner as the sidewalk is paved, and permits the public using such sidewalk to also use such paved strip between the front of his building and the street line as a sidewalk, he will not be held to have thereby dedicated the same to the public by implication, unless it be further shown that the public authorities, with his knowledge, exercise acts of dominion thereon indicative of their belief that the same has been dedicated to the public."

City of Staunton, 169 Va. at 437, 193 S.E. at 700 (quoting Morlang v. City of Parkersburg, 84 W.Va. 509, 100 S.E. 394 (1919)) (emphasis added); see also City of Hampton v. Stieffen, 202 Va. 777, 785-86, 120 S.E.2d 361, 366 (1961) (holding that evidence of public use and maintenance by a public authority "shows that there was a dedication and an acceptance").

In the present case, there is ample evidence that the public has used the entirety of Cape Henry Beach since 1926, the City has patrolled and maintained the property for over thirty years, and the Condo Association never objected to the City's exercise of dominion and control. Thus, there is sufficient evidence proving that there was an implied dedication and

13

acceptance thereof by the City.[7]  Accordingly, we cannot say that the circuit court erred in finding that the City had acquired ownership of the Easements by implied dedication.[8]

### III. Conclusion

For the foregoing reasons, the circuit court did not err by allowing the City to condemn property that it also claimed to own.  Furthermore, the evidence demonstrates that the City acquired the Easements through an implied dedication based on the continued public use and the City's efforts in maintaining and patrolling the property.  Accordingly, we will affirm the ruling of the circuit court.

Affirmed.

---

[7] Furthermore, although not specifically alleged by the City, the doctrine of estoppel would necessarily imply the Condo Association's intent to dedicate the Easements.  In expending significant resources to maintain the beach for over 30 years, the City clearly relied to its detriment on the Condo Association's acquiescence to the City's exercise of dominion and control over the beach.

[8] As the City's purported abandonment of Ocean Avenue in 1954 had no bearing on either the circuit court's decision or on this Court's decision affirming the circuit court, we do not consider the Condo Association's fourth assignment of error.

CHIEF JUSTICE KINSER, with whom JUSTICE MILLETTE and JUSTICE MIMS join, dissenting.

In this appeal from a condemnation proceeding, the majority concludes that "the General Assembly clearly intended to allow a circuit court to determine ownership of the condemned property as part of the condemnation proceeding" as between the condemnor and the defendants named in the condemnation petition. Unlike the majority, I conclude that neither the phrase "claims of the parties with respect to the ownership" in Code § 25.1-222 nor the phrase "controversy among claimants . . . to the ownership of the property subject to the condemnation" in Code § 25.1-241 encompasses or contemplates ownership claims asserted by the condemnor. In my view, the circuit court did not have the authority in this condemnation proceeding to render a judgment holding that the condemnor owned the property it sought to condemn. Thus, I respectfully dissent.

Article 1, § 11 of the Constitution of Virginia prohibits the General Assembly from passing "any law whereby private property shall be taken or damaged for public uses, without just compensation." Generally, "[c]ondemnation proceedings are based on the constitutional principle that when the condemnor takes private land for public purposes, the owner may not be deprived of the use and control of his property unless he receives just compensation therefor." Bartz v. Board of Supervisors of

15

Fairfax Cnty., 237 Va. 669, 672, 379 S.E.2d 356, 357 (1989). The taking of private property "is a matter of serious import and is not . . . permitted except where the right is plainly conferred and the manner of its exercise has been strictly followed."  School Bd. of Harrisonburg v. Alexander, 126 Va. 407, 412, 101 S.E. 349, 351 (1919) (emphasis added).

Title 25.1 of the Code addresses the subject of eminent domain and sets forth specific procedures for condemnation proceedings.  When statutes relate to the same subject, they may be considered in pari materia.  Lucy v. County of Albemarle, 258 Va. 118, 129, 516 S.E.2d 480, 485 (1999).  Upon considering the entire body of statutes pertaining to condemnation proceedings, I cannot conclude, as the majority does, that based on the language in two discrete statutes, the General Assembly intended to permit condemnation proceedings to be used to try claims of ownership between the condemnor and the defendant owners named in the condemnation petition.

The General Assembly defined the terms " '[p]etitioner' " and " 'condemnor' " as "any person who possesses the power to exercise the right of eminent domain and who seeks to exercise such power."  Code § 25.1-100.  The General Assembly also defined the term " '[o]wner' " as "any person who owns property, provided that the person's ownership of the property is of record in the land records of the clerk's office of the circuit

16

court of the county or city where the property is located." Id.
Obviously, in the present case, the City of Virginia Beach (the City), which is the condemnor here, was not an "owner" under this Title of the Code because its alleged existing ownership of the perpetual recreational easement and shore protection/construction easement (collectively, the Easements), was not of record in the land records of the Circuit Court Clerk's Office of the City of Virginia Beach. So the question is whether the General Assembly, having specifically defined these terms, nevertheless intended to include a petitioner/condemnor when it used the terms "parties" and "claimants" in Code §§ 25.1-222 and -241, respectively.

A condemnation proceeding "shall be initiated by filing a petition complying with the requirements of [Code] § 25.1-206" in the circuit court of the city or county where the property to be condemned is located. Code § 25.1-205; see also Code § 25.1-201. In pertinent part, a petition for condemnation must contain:

> 1. A caption wherein the person vested by law with power to exercise the right of eminent domain shall be the petitioner, and the named defendants shall be at least one of the owners of some part of or an interest in the property to be taken or damaged, and the property to be taken designated generally by kind, quantity and location.
>
> 2. Short and plain statements of the following:

. . . .

e. The estate, interest or rights in the property to be taken;

. . . .

g. As to each separate piece of property to be taken or damaged, the names and residences, so far as known by petitioner, of the defendants who are joined as owners of the property, or of some interest therein, if their names have been ascertained by a reasonably diligent search of the records, considering the character and value of the property involved and the interests to be acquired, or if their names have otherwise been learned; and if the names of other persons or classes of persons to be joined as owners of the property are unknown, such persons may be made defendants under the designation of "Unknown Owners";

h. Compliance with the provisions of [Code] § 25.1-204 and the manner of such compliance;

. . . .

3. A prayer asking for judgment (i) that the property or the estate, interest or rights therein be condemned and the title thereto vested in the petitioner, (ii) that just compensation be ascertained as provided in [Code] § 25.1-230 and awarded, and (iii) for such other relief as may be lawful and proper.

Code § 25.1-206. Despite its assertion that it already owned the Easements, the City failed to identify its ownership "interest or rights in the property to be taken" or identify itself as "defendants who are joined as owners of the property or some interest therein" in the petition as required by Code §§ 25.1-206(2)(e) and (g).

18

With regard to the provision in Code § 25.1-206(2)(h) requiring compliance with Code § 25.1-204, except in situations not applicable here, a condemnor cannot "institute proceedings to condemn property until a bona fide but ineffectual effort to purchase from the owner the property sought to be condemned has been made."  Code § 25.1-204(A).  In the City's complaint, which it captioned as a "PETITION FOR CONDEMNATION TO CONFIRM PUBLIC EASEMENTS," the City alleged that it had made such an offer to purchase the Easements.  Having done so, it is illogical to allow the City to condemn property but simultaneously claim ownership of the Easements in the condemnation proceeding itself.

An owner may file an answer and grounds of defense in response to a petition for condemnation.  Code § 25.1-213.  The failure of an owner to do so does not "preclude the owner from . . . presenting evidence as to valuation and damage, or . . . sharing in the award of just compensation according to his interest therein or otherwise protecting his rights."  Code § 25.1-214(A).  Furthermore, "[a]ny person not already a party to the proceedings whose property . . . is to be taken or damaged . . . as a result of the taking and use by the petitioner, may be made a party to the proceeding upon filing a petition for intervention."  Code § 25.1-218.

After the condemnor files the condemnation petition, the proceeding itself consists of two stages.  Williams v. Fairfax Cnty. Redevelopment & Hous. Auth., 227 Va. 309, 313, 315 S.E.2d 202, 204 (1984).  In the first stage, a determination about the "fair market value of the land taken and the damage, if any, to the remaining land" is made.  Id. at 313, 315 S.E.2d at 204; see also Code §§ 25.1-227.2 through -236.  Only the condemnor and the owner of the land have an interest in this valuation stage.  Williams, 227 Va. at 313-14, 315 S.E.2d at 204.  To avoid any delay in determining just compensation due to "the claims of the parties with respect to the ownership of any land . . . or to the interest therein of the respective parties," the court is required to retain the deposit of the award for the property condemned "until the rights of the respective parties have been determined in the manner hereinafter provided in [Code] § 25.1-241."  Code § 25.1-222.

In the second stage, "[a] determination of a particular owner's loss relative to that of others is . . . undertaken [and] the condemnation award is allocated among those with interests in the property."  Fairfax Cnty. Park Auth. v. Virginia Dep't of Transp., 247 Va. 259, 263, 440 S.E.2d 610, 612 (1994).  The "title to the property and rights condemned shall vest in the petitioner" upon paying into court the sum ascertained as just compensation.  Code § 25.1-237.  Upon

20

payment of the just compensation sum into court and confirmation of the report of the body making that determination, "the interest or estate of the owner or owners in the property taken or damaged shall terminate and they shall have such interest or estate in the fund and any interest accrued thereon so paid into court as they had in the property so taken or damaged." Code § 25.1-240(A). In accordance with Code § 25.1-222, it is at this point in the condemnation proceeding that the court determines "the rights and claims of all persons entitled to the fund" when "there exists a controversy among claimants to the fund . . . or to the ownership of the property subject to the condemnation." Code § 25.1-241(A).

In considering these various statutes, it must be remembered that "the parties to a condemnation proceeding are not in the position of plaintiffs and defendants in traditional actions or suits." Trout v. Commonwealth Transp. Comm'r., 241 Va. 69, 73, 400 S.E.2d 172, 174 (1991). Because "[t]he exercise of the power of eminent domain, and the implementation of the constitutional just-compensation clause . . . grow out of an entirely different history, . . . . [t]he petitioner in a condemnation case is . . . not a traditional plaintiff." Id.

Viewing the entire body of statutes governing condemnation proceedings, I cannot conclude that the General Assembly, by using the term "parties" in Code § 25.1-222 and the term

"claimants" in Code § 25.1-241, intended for a condemnor, in a condemnation proceeding, to have the capacity to condemn private property while simultaneously claiming ownership of the property. The terms "claimants" and "parties" are generic and are not defined as are the terms " '[p]etitioner,' " " 'condemnor,' " and " '[o]wner' ". Having defined these particular terms, the General Assembly used them repeatedly throughout Title 25.1 but did not use them in Code §§ 25.1-222 and -241. Moreover, it would seem obvious that the City, as the condemnor, cannot take and condemn property from itself. See Continental Cas. Co. v. Town of Blacksburg, 846 F.Supp. 486, 487 (W.D. Va. 1994) ("It is axiomatic that the Commonwealth of Virginia cannot take property from itself. Nor can an entity of the state take property already owned by the state.").

The majority's decision today also renders other procedures in condemnation proceedings incongruous. For instance, when the condemnor pays the just compensation sum into court in accordance with Code § 25.1-237, title to the property and the rights condemned vests in the condemnor. But, if the condemnor then proves in a hearing conducted pursuant to Code § 25.1-241 that it already owns the property, that initial vesting is rendered meaningless. Furthermore, as happened in this case, the defendant, 3232 Page Avenue Condominium Unit Owners Association, had to expend resources to present evidence as to

22

the valuation of the Easements and damage only then to learn that the City had already acquired the Easements it sought to condemn through implied dedication and acceptance. Likewise, the just compensation trial itself was not a wise use of judicial resources if the City already owned the Easements.

In addition, the prayer for relief in the petition for condemnation filed by the City, as the condemnor, is telling. In relevant part, the City requested the following relief:

> (i) confirm that the Easement Area is a public beach (ii) . . . determine the value of the Easements taken and damages, if any, which may accrue to the remaining property of the Defendant . . . (iv) condemn the Easements and rights described and confirm and vest the title in the City; (v) ascertain the amount of the just compensation to be awarded to the City on behalf of the general public due to long public use of the Easement Area for recreational purposes and maintenance of the Easement Area by the City.

The only property interest requested by the City was to confirm that the "Easement Area is a public beach." Also, I find no authority in Title 25.1 that permits the City to request "just compensation . . . on behalf of the general public."

Thus, I conclude that the circuit court erred in holding that, in this condemnation proceeding, it could adjudicate the City's asserted ownership of the Easements it sought to condemn. Under the procedures set forth for condemnation proceedings, the court had no authority to rule on the City's claim. Thus, its order finding that the City had acquired the Easements by

23

implied dedication and acceptance is, at a minimum, voidable, if not void ab initio.  See Collins v. Shepherd, 274 Va. 390, 402, 649 S.E.2d 672, 678 (2007) ("An order is void ab initio, rather than merely voidable, if the character of the judgment was not such as the court had power to render, or because the mode of procedure employed by the court was such as it might not lawfully adopt.") (internal quotation marks omitted); Singh v. Mooney, 261 Va. 48, 52, 541 S.E.2d 549, 551 (2001) ("The lack of jurisdiction to enter an order under any of these circumstances renders the order a complete nullity [that] may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner.") (internal quotation marks omitted).

For these reasons, I respectfully dissent and would reverse the portion of the circuit court's judgment holding that it had the authority in this condemnation proceeding to adjudicate the City's claim that it owned the Easements it sought to condemn and vacate that portion of the circuit court's judgment holding that the City acquired ownership of the Easements by implied dedication and acceptance.

JUSTICE MIMS, dissenting.

I join the dissenting opinion of CHIEF JUSTICE KINSER. However, I also write separately to dissent from the majority's holding that the City proved an implied dedication of the

24

Easements over the portion of Cape Henry Beach owned by the Condo Association.

Private property cannot become public property by dedication unless two events occur in the proper sequence. The first event is a landowner's offer to donate his private property to the public. The second element is an acceptance by the government on behalf of the people. Mulford v. Walnut Hill Farm Group, LLC, 282 Va. 98, 106, 712 S.E.2d 468, 473 (2011); Bradford v. Nature Conservancy, 224 Va. 181, 198, 294 S.E.2d 866, 875 (1982). If there has been no offer to donate, there is nothing for the government to accept. See Keppler v. City of Richmond, 124 Va. 592, 602, 98 S.E. 747, 750 (1919) ("[S]ince in our view of the case a preponderance of the evidence does not establish that there was ever a dedication of the land in question for a public use, we shall not enter in this opinion upon the question of whether there was a valid acceptance of the land for public use on the part of the city or of the public.").

The landowner's offer "need not be made by deed or other writing, but may be effectually and validly made by acts or verbal declarations. It may be express or implied. It may be implied from long use by the public of the land claimed to be dedicated." City of Staunton v. Augusta Corp., 169 Va. 424, 432-33, 193 S.E. 695, 698 (1937). Nevertheless, the fundamental

prerequisite is the intent of the landowner to transfer his or her property to public ownership:

> "To constitute a dedication there must be an intention to appropriate the land for the use and benefit of the public. The intention, the animus dedicandi, is the vital principle of the doctrine of dedication. The acts and declarations of the landowner indicating such intention <u>must be unmistakable in their purpose</u>, and <u>decisive in their character</u>, to have that effect."

<u>Id.</u>, at 433, 193 S.E. at 698 (quoting <u>Harris v. Commonwealth</u>, 61 Va. (20 Gratt.) 833, 837 (1871)); <u>see also</u> <u>City of Hampton v. Stieffen</u>, 202 Va. 777, 784, 120 S.E.2d 361, 365 (1961) (" 'The intent is its vital principle' and 'must . . . be manifested by some <u>unequivocal act</u> . . . .' ") (quoting <u>Buntin v. City of Danville</u>, 93 Va. 200, 204, 24 S.E.2d 830, 830 (1896) (emphasis added)); <u>Keppler</u>, 124 Va. at 610, 98 S.E. at 753 ("The intent to dedicate <u>is essential</u> . . . to complete a dedication" (emphasis added)).

"[W]e know that individual owners of property are not apt to transfer it to the community or subject it to public servitude without compensation," so a party alleging that a landowner has intentionally done so bears the burden of proving it.[*] <u>City of Staunton</u>, 169 Va. at 433, 193 S.E. at 698; <u>accord</u>

---

[*] A landowner of course may become estopped from denying intent to dedicate property to public use, just as any party may become estopped from denying or asserting any relevant fact under the familiar principles of estoppel, but only after an appropriate analysis to determine whether the landowner is in

*Keppler*, 124 Va. at 613, 98 S.E. at 754.  It is true that public use may be evidence of such intent.

However, public use may also show nothing more than the landowner's willingness to permit transient use by the public rather than a transfer or relinquishment of his rights of ownership.  *Commonwealth v. Kelly*, 49 Va. (8 Gratt.) 632, 634-35 (1851) ("A permission to pass over land may prove an intention to dedicate <u>or</u> a mere license revocable at the will of the owner; and we think that the mere permission to pass over land ought in this state to be regarded as a license." (emphasis added)); <u>see also</u> <u>Station #2, LLC v. Lynch</u>, 280 Va. 166, 176, 695 S.E.2d 537, 542-43 (2010) ("Permission to enter the real property of another does not rise to the level of an easement. An easement concerns the continuing use of real property. Permission merely to enter the real property of another without such continuing use is a license." (citations omitted)). Therefore, merely permitting public use is ambiguous; it is not

_____

fact so estopped.  <u>See</u> <u>Keppler</u>, 124 Va. at 611, 98 S.E. at 753 (Where the doctrine of estoppel applies, "the law will imply the intent to dedicate . . . even against a contrary intent.  [But i]n the case before us we cannot inquire or decide whether the doctrine of estoppel aforesaid is applicable" because the proper parties are not present.)
    It seems unlikely that estoppel would apply in this case because the City necessarily would have to allege it relied on conduct of the Condo Association to its detriment.  <u>Mulford</u>, 282 Va. at 111, 712 S.E.2d at 476; <u>Waynesboro Village, L.L.C. v. BMC Props.</u>, 255 Va. 75, 82, 496 S.E.2d 64, 68 (1998).

27

an "unequivocable act," City of Hampton, 202 Va. at 784, 120 S.E.2d at 365, or "unmistakable in [its] purpose." City of Staunton, 169 Va. at 433, 193 S.E. at 698.

To the contrary, we have held that public use may prove an intent to dedicate only if the use is "adverse to and exclusive of the use and enjoyment of the property" by the landowner. Id. When the public use is openly hostile to the landowner's continued ownership, his failure to object to protect his interest is evidence that he no longer claims it. However, if the public's use of private land is merely subordinate to "and in connection with its use by the owners," id., there is no such evidence. Rather, in such cases the landowner may be willing to share his property with others, so long as they do not interfere with his use or interest, without divesting himself of ownership and the authority to stop sharing it. Keppler, 124 Va. at 614, 98 S.E. at 754.

The majority opinion states that this principle does not apply when the government exercises dominion and control over the property. I disagree for two reasons. First, I am not persuaded that principle is correct. Second, I do not believe the evidence establishes that the City exercised dominion and control.

On the first point, the majority relies on an excerpt from City of Staunton that quotes a headnote of the Supreme Court of

28

Appeals of West Virginia's opinion in <u>Morlang v. City of Parkersburg</u>, 100 S.E. 394 (W. Va. 1919). The headnote states that public use is insufficient to prove dedication "unless it be further shown that the public authorities, with [the landowner's] knowledge, exercise acts of dominion thereon indicative of their belief that the same has been dedicated by the public." <u>City of Staunton</u>, 169 Va. at 437, 193 S.E. at 700. However, this is dictum and irrelevant to this case.

The excerpt is introduced with the statement "[n]either do we think that the city showed with the necessary clarity of proof <u>that it has ever accepted this strip of property and exercised jurisdiction and dominion over it</u> as one of its streets." 169 Va. at 436, 193 S.E. at 699. Therefore, it applies not to the <u>offer</u> but to the <u>acceptance</u> phase of a dedication. It is dictum because the Court already had concluded that there was no offer, <u>id.</u>, and a determination that there was no offer obviates an analysis of acceptance. <u>See Keppler</u>, 124 Va. at 602, 98 S.E. at 750. It is irrelevant because the issue in this case is whether the Condo Association intended to offer a dedication, not whether the City accepted.

I believe that if the government's exercise of dominion and control is to be relevant as evidence of the landowner's intent to donate, rather than the government's acceptance, it must either be accompanied by evidence of an affirmative act of

29

consent by the landowner, City of Staunton, 169 Va. at 437, 193 S.E. at 700 ("Dedication, whether express or implied, rests upon the consent of the owner."), or be sufficiently adverse to or exclusive of the landowner's interest that he knows the government exerts a claim of right. Keppler, 124 Va. at 612, 98 S.E. at 753 (The government's action on the disputed land must be sufficient "to give notice that a claim to it . . . was asserted.").

City of Hampton, the other case cited by the majority, is consistent with this principle because of the landowner's affirmative acts. In that case, the city claimed an implied dedication of an easement over an alley. The record showed that the landowner had, among other things, asked the city to construct a curb and to place "no parking" signs on the west side of the alley, and thereafter asked police to ticket vehicles parked there in violation of the signs. 202 Va. at 783-84, 120 S.E.2d at 365. There is no analogous evidence in this case that the Condo Association requested any improvements or public expenditures on its beach.

Similarly, the City's undertakings in this case were not hostile to the interests of the landowner. As set forth in its brief they include the enactment of public safety ordinances, police patrols, maintaining the sand dunes, and removal of trash, litter, and debris. None of these activities adequately

informed the Condo Association that the City intended to divest the Condo Association of its interest in the property; none were adverse to or exclusive of its interests.  They therefore did not adequately inform the Condo Association that it was obligated to object or lose its interest.

To the contrary, "[t]he first time, so far as this record discloses, that the public authorities ever asserted an interest or a right [adverse to the Condo Association] was when" the City sent its pre-condemnation offer letter.  Morlang, 100 S.E. at 399.  "[I]nstead of acquiescing in the [C]ity's claim at that time[, the Condo Association] resisted and contested" it, asserting and claiming complete title.  Id. at 399-400.  Accordingly, it cannot be said that there is evidence the Condo Association intended to offer the public any easement over its beach.

For these reasons, and those expressed by Chief Justice Kinser in her separate opinion which I join, I dissent and would reverse the judgment of the circuit court.