**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-2296**

───────────────

BRIAN & SUSAN FERNAAYS,

             Plaintiffs - Appellants,

      and

LISA RHODES, Representative of the Estate of Otis Rock; REAL PROPERTY KNOWN AS TAX PARCEL NOS.:  34H-01-031 AND 34H-01-032,

             Plaintiffs,

      v.

ISLE OF WIGHT COUNTY,

             Defendant - Appellee.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Arenda L. Wright Allen, District Judge.  (2:21-cv-00099-AWA-LRL)

───────────────

Argued:  May 6, 2025                              Decided:  July 14, 2025

───────────────

Before DIAZ, Chief Judge, NIEMEYER, Circuit Judge, and Matthew J. MADDOX, United States District Judge for the District of Maryland, sitting by designation.

───────────────

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Chief Judge Diaz and Judge Maddox joined.

───────────────

**ARGUED:** Joseph Very Sherman, POOLE BROOKE PLUMLEE PC, Virginia Beach, Virginia, for Appellants. Donald Rossen Schuyler Greene, PENDER & COWARD, P.C., Suffolk, Virginia, for Appellee. **ON BRIEF:** William B. Newman, POOLE BROOKE PLUMLEE, P.C., Virginia Beach, Virginia, for Appellants.

———————

2

NIEMEYER, Circuit Judge:

Brian and Susan Fernaays own a house on lot 31 in Brewers Creek Subdivision in Isle of Wight County, Virginia, and at the edge of their property and shared with the adjacent lot, lot 32, lies a 20-foot "drainage easement" that extends 10 feet onto each lot. An underground stormwater drainage pipe lies within the easement and runs from a storm drain in the street in front of the lots to a natural ravine behind the lots from which stormwater then drains into Brewers Creek. From a loss of support over the years, sections of the concrete pipe pulled apart, such that stormwater was able to escape from the drainage pipe and cause substantial erosion on both lots 31 and 32. The Fernaayses claim that it will cost roughly $150,000 to repair the drainage pipe and restore the surrounding area.

They commenced this action against Isle of Wight County, claiming that the drainage easement is owned by the County and therefore that the County has a duty to maintain the pipe within the easement. They alleged that the County's failure to maintain and repair the pipe caused an unconstitutional taking of their property under both the Virginia Constitution and the U.S. Constitution.

Reviewing the subdivision plat and accompanying Declaration of Covenants and Restrictions filed in the County's land records when the subdivision was created, the district court held that the easement was never "dedicated" to the County and that the County therefore had no duty to maintain the drainage pipe. Accordingly, it entered summary judgment in favor of the County. We affirm.

3

I

Brewers Creek Partnership created Brewers Creek Subdivision in 1989 on roughly 50 acres, consisting of three streets and 50 lots that fronted onto the streets, all as depicted on the subdivision plat that was filed in the County land records. The Partnership also filed a "Declaration of Covenants and Restrictions" to subject the lots "to certain restrictive covenants and conditions . . . running with the land."

The recorded plat depicts, in addition to the 50 lots and three streets, two well lots, a park, and five easements. Specifically, the plat shows an easement consisting of a 5-foot strip contiguous to State Route 661, which abuts the subdivision, labeled, "5′ hereby dedicated for road widening"; a "20′ easement for future water line extension" on the property line between lots 33 and 34; a "15′ easement for water treatment plant discharge" on lot 4; and a "20′ drainage easement" on the property lines between lots 6 and 7 and again between lots 31 and 32. The plat was signed by Brewers Creek Partnership with the certification that it was dedicating "all streets, alleys, walks, parks, and other open spaces to public use as noted." And the Declaration of Covenants and Restrictions further provides with respect to easements:

> Easements shown on the aforesaid plat for streets, drainage and utilities are for the benefit of the owners of all lots in said plat and may be freely used by the County of Isle of Wight for the benefit of the owners of said lots and their assigns, as well as the general public, provided, however, that in any resubdivision or rearrangement of said lots, [the Partnership] retains the right to relocate the said easements to conform to such resubdivision or rearrangement.

Brian and Susan Fernaays purchased lot 31 and the new house on it in September 1998, subject to the plat and the Declaration of Covenants and Restrictions. Some 20 years

4

later, in 2018, they noticed erosion occurring within the drainage easement on both their property and lot 32, and the erosion has increased ever since. Pictures in the record show several separated sections of concrete drainage pipe and extensive erosion around them. The repair of the drainage pipe and the restoration of the surrounding area will, according to the Fernaayses, cost roughly $150,000. When the Fernaayses notified the County of the issue, the County refused to repair the damage, disclaiming any ownership of the drainage easement or the pipe within it and thus any duty to undertake repair.

The Fernaayses then commenced this action against the County, alleging that it had become the owner of the 20-foot easement by dedication when the subdivision was created and that it therefore had a duty to maintain the drainage pipe within the easement. Accordingly, the Fernaayses claimed that the County is responsible for the damage resulting from its failure to maintain the pipe. They alleged that, because the County damaged their property without compensation, it violated Article I, Section 11 of the Virginia Constitution, and it took their property without compensation, in violation of the Fifth Amendment to the U.S. Constitution.

The County disputed the Fernaayses' claims, contending that it did not own either the drainage easement or the underground pipe within it and therefore had no obligation to repair damage to the pipe and the surrounding area. It argued that the documents relied on by the Fernaayses did not, in fact, effect a dedication. It also introduced uncontroverted evidence that it did not install the pipe, and it had never maintained it. And because it neither owned the drainage easement nor maintained the pipe, it could not, according to the County, be held responsible for any damage resulting from the deterioration of the pipe.

5

On cross motions for summary judgment, the district court granted judgment to the County. It concluded that Brewers Creek Partnership never dedicated the drainage easement to the County, either under the Virginia dedication statute or under the common law. Accordingly, it held that the County was not obligated to repair the damage occurring in the easement.

From the district court's judgment dated November 28, 2023, the Fernaayses filed this appeal.

II

The Fernaayses contend that the district court erred in concluding that the Brewers Creek Partnership did not dedicate the drainage easement to Isle of Wight County. They rely in particular on two passages in the plat and the Declaration of Covenants and Restrictions, which, they claim, accomplished the dedication: (1) Brewers Creek Partnership's certification on the plat that it "dedicated all streets, alleys, walks, parks, and other open spaces to public use as noted," and (2) the provision in the Declaration of Covenants and Restrictions that "[e]asements shown on the aforesaid plat for streets, drainage and utilities are for the benefit of the owners of all lots in said plat and may be freely used by the County of Isle of Wight for the benefit of the owners of said lots and their assigns, as well as the general public." They maintain that the Partnership thus dedicated the drainage easement to the County either under common law by an unequivocal "offer" of dedication and the County's acceptance of that offer or under the dedication statute, which automatically provides for dedication simply by the recordation of an

6

approved plat.  *See* Va. Code Ann. § 15.1-478 (1989) (current version at Va. Code Ann. § 15.2-2265).  Thus, the Fernaayses argue, the County, as owner of the easement, had the duty to maintain the drainage pipe and therefore is responsible for its failure.

The dispositive issue that the Fernaayses' claims present is thus whether Brewers Creek Partnership effected a dedication to the County of the drainage easement when it created the subdivision.

At common law, "dedication" referred to a landowner's *grant* to the public of a limited right to use his property.  *Brown v. Tazewell Cnty. Water & Sewage Auth.*, 306 S.E.2d 889, 891 (Va. 1983).  And such a grant required (1) an "offer" consisting of "unequivocal evidence of an intention to dedicate" an interest in property to the public and (2) an "acceptance" by the grantee.  *Id.*  The offer could be accepted, according to Virginia law, in at least two ways: (1) by an express act such as a formal resolution, *City of Norfolk v. Meredith*, 132 S.E.2d 431, 435–36 (Va. 1963); or (2) by long public use with acts of dominion, *Brown*, 306 S.E.2d at 891–92.

With an effective dedication of an interest in property, the public entity becomes the owner of that interest with the obligation to maintain it "in the manner necessary to protect the servient estates."  *Jenkins v. County of Shenandoah*, 436 S.E.2d 607, 610 (Va. 1993).  And if the public entity were to fail to maintain the dedicated interest, it could be held liable under the Virginia Constitution for any resulting damage to the servient estate in an inverse condemnation proceeding.  *See id.* at 609–10.  Similarly, the public entity might be subject to a takings claim under the Fifth Amendment to the U.S. Constitution.  *See Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 33–34 (2012); *see also United States v. Cress*,

7

243 U.S. 316, 326–27 (1917). For these reasons, it is important that any stated intent of dedication be "unequivocal." *City of Hampton v. Stieffen*, 120 S.E.2d 361, 365 (Va. 1961).

Dedication in Virginia can also be accomplished pursuant to its dedication statute. As the statute provided in 1989, when the subdivision here was created, a grantor could dedicate a property interest to a public entity by preparing a plat for recording in the manner specified by the statute and manifesting its intent to dedicate that property interest on the plat. *See* Va. Code Ann. § 15.1-478 (1989) (current version at Va. Code Ann. § 15.2-2265). Once the plat was approved by the public entity, its recording automatically effected a dedication. Specifically, the statute provided:

> The recordation of [an approved] plat shall operate to transfer, in fee simple, to the respective counties and municipalities in which the land lies such portion of the premises platted as is on such plat set apart for streets, alleys or other public use and to transfer to such county or municipality any easement indicated on such plat to create a public right of passage over the same . . . .

*Id.* The Virginia Supreme Court has clarified, however, that this statute does not provide for the dedication of "water and sewer easements," including those "for subsurface installation and maintenance." *Burns v. Bd. of Supervisors*, 312 S.E.2d 731, 736 (Va. 1984).

Applying these principles to the circumstances here, we conclude that Brewers Creek Partnership did not unequivocally dedicate the drainage easement on lots 31 and 32 to Isle of Wight County, so as to create a duty to maintain the drainage pipe.

As noted, the Fernaayses rely for their claim of dedication on two passages, one on the plat and one in the Declaration of Covenants and Restrictions. On the plat, Brewers

8

Creek Partnership certified that it was "*dedicat[ing]* all streets, alleys, walks, parks, and other open spaces to public use as noted." (Emphasis added). While this language unequivocally manifests an intent to dedicate, it does not manifest an intent to dedicate *easements* or *underground pipes*. And the depiction of the drainage easement on the plat does not suggest otherwise. It is labeled simply, "20′ drainage easement." Notably, this label is unlike the 5-foot easement abutting Route 661, which Brewers Creek Partnership labeled, "5′ hereby *dedicated* for road widening" (emphasis added), thereby manifesting an unequivocal intent to dedicate. The "20′ drainage easement" indicates by contrast that the drainage easement simply exists. The plat thus lacks the necessary evidence of an intent to dedicate the "20′ drainage easement" and the pipe within it.

Moreover, the Declaration of Covenants and Restrictions does not provide the Fernaayses with the necessary support. The language on which they rely begins, "Easements shown on the aforesaid plat for streets, drainage and utilities are for the benefit of the owners of all lots," suggesting that either Brewers Creek Partnership retained or the owners were given ownership of the drainage easements. And it continues with the clause that the easements "*may be freely used* by the County of Isle of Wight for the benefit of the owners . . . as well as the general public." (Emphasis added). While the Fernaayses argue that this clause gave the County *ownership* of the easements and the pipe, the language does not unequivocally manifest Brewers Creek Partnership's intent *to dedicate* the drainage easement on the plat to the County. To the contrary, it appears to suggest that the easements were retained by the lot owners or Brewers Creek Partnership, and the County was only given permission *to use* the easements. We agree with the district court that giving

9

an entity permission to use a preexisting easement is not the same as dedicating it to the entity. And this conclusion is fortified by the additional language in the provision that the developer affiliated with Brewers Creek Partnership "retain[ed] the right to relocate the said easements" with respect to any "resubdivision or rearrangement" of the subdivision's lots, suggesting perhaps that the developer owned the easements. But the language certainly does not suggest that Brewers Creek Partnership dedicated the easements to Isle of Wight County. Nor does the Declaration of Covenants and Restrictions make any mention of the drainage pipe. And "[t]o conclude . . . that [a public entity's] right to use the public easements by implication transfers title to lines installed by others would distort long-cherished principles of private ownership of property." *Burns*, 312 S.E.2d at 736.

In the absence of an unequivocally manifested intent to dedicate the drainage easement, the County could not be considered its owner so as to be responsible for failing to maintain the pipe in it. Accordingly, we affirm the district court's holding to that effect.

Without dedication to the County, the owners of lots 31 and 32 are left with the scope of their original purchases of the real property, which included the underground drainage pipe. Thus, we can only suppose that, as owners of the property, they would have to bear the costs of its maintenance and that, with the drainage easement, they would have legal access for doing so.

The judgment of the district court is accordingly

AFFIRMED.

10